STATE *vs.* JONATHAN M. BATCHELDER.

WASHINGTON, *March,* 1834.

A justice of the peace, who is a rated inhabitant of the town into the treasury of which the fine is to be paid, upon conviction upon a complaint, has jurisdiction of the cause.

A complaint of a town grand juror may be amended by leave of court.

This cause came from a justice up to the county court. It was a complaint against the respondent for firing on training day without being embodied under the command of a commissioned officer contrary to the statute. Plea to the jurisdiction of the justice who tried the complaint on the ground that he was a citizen and rated inhabitant of the town in which the offence was committed and into the treasury of which the fine was to be paid ; to which plea there was a demurrer and joinder. The court overruled this plea and decided that the justice had jurisdiction ; to which decision the respondent excepted. The respondent then demurred to the complaint, whereupon the prosecuting officer moved to amend.* To the allowance of the amendment the respondent objected, but the court allowed the same, to which decision the respondent also excepted. Judgment was rendered for $2 00 fine and costs, and upon the exceptions taken by the respondent the cause was passed to this court.

*Smith and Peck for respondent.*—In this case two questions are raised. 1. Had the magistrate jurisdiction ? 2. Had the county court authority to allow the complaint to be amended?

The principle involved in the first question is all important to the pure and impartial administration of justice in this state ; and though this is probably the first time that this question has been presented to this court in its present form, since the organization of the government, yet it has been long settled in England by decisions in analogous cases. First, in that of a witness. It was held at a very early period, that an inhabitant of a county or other district, upon which any duty is thrown, to which the witness is bound to contribute, is not competent to give evidence in discharge or alleviation of the burden.—1 Sid. 192.—2 Lev. 231.—2 Vern. 317.—2 Stark. Ev. 776. So in settlemet cases, a *rated* inhabitant, by common law, was incompetent to give evidence for his own parish as to the pauper's place of settlement, (4 Term. Rep. 17.—5

* What this amendment was cannot be ascertained by the editor.

WASHINGTON,
March,
1884.

State
vs.
Batchelder.

id. 664.—6 id. 157,) or in any proceeding for a penalty given by any statute to the poor of the parish.—2 Stark. Ev. 776. —1 Sess. cases, 874. But in this and several of our sister states the inhabitants of towns and parishes are made admissible witnesses by statute. This provision, however, does not affect the argument drawn from the settled rule of the common law. Secondly, as to the case of a juror. The relaxation of the rule, as to questions of interest, has never been extended to jurors. They must be *omni exceptione majores*.— Co. Litt. 57, B. The same rule has been adopted in this country.—2 Caine's Rep. 129, 133.—2 N. H. Rep. 349. In *Wood* vs. *Stoddard*, (2 John. Rep. 194,) which was an action *qui tam* brought on the statute against usury, which gives a moiety of the penalty to the poor of the town where the offence is committed, it was held a good cause of challenge against the jury, that they were inhabitants of the town entitled to the penalty. Thus careful is the law to exclude from the jury-box every one who has the most remote interest in the matter to be tried, and we shall find the same caution is observed by the common law, in excluding from the seat of justice every interested judge. Lord Holt says, in the quaint language of his day, that the mayor of *Hertford* was laid by the heels, for sitting in judgment in a cause where he himself was lessor of the plaintiff, in ejectment, though he, by the charter, was sole judge of the court.—Anonymous, 1 Salk. 395. In a case between the parishes of *Great Charter* and *Kennington*, (2 Stra. 1173,) the order of removal was quashed at the sessions, because one of the justices was an inhabitant of the parish from whence the *pauper* was removed. Upon this case coming on for argument, in K. B. it was insisted that the order of the justices should be supported, inasmuch as the 13th and 14th Car. 2, C. 12, provides that *any* two justices of the peace may make the order, and that the order in question was in conformity with the general practice. But the court said that this was a judicial act, and the party interested is tacitly excepted. The practice could not overturn so fundamental a rule of justice, as that a party interested could not be a judge. As to the case of corporations, they said that if it appeared there were no other justices, it might be allowed to prevent a failure of justice. The counsel here cited and commented on *Rex* vs. *Yarpol*, 4 T. R. 71.—*Day* vs. *Savadge*, Hobart 87. —*Wood* vs. *Mayor of London*, in error, 1 Salk. 397.—Doc-

WASHINGTON,
*March,*
1834.

State
*vs.*
Batchelder.

tor Bonham's case, 18 Co. 118.—*Bellows et al.* vs. *Pearson,* 19 John. 172.—16 Mass. R. 544.—2 Mass. R. 544.—6 Pick, 104–9. Of the decisions in this country the counsel cited 12 Mass. R. 324.—*Pierce* vs. *Sheldon,* 13 John. Rep. 191.

These authorities would seem to be decisive of the question, and we are irresistably led to the conclusion, that by the principles of the common law, the magistrate had no jurisdiction of the case at bar. But our legislature, to remove any doubt on the question that might be supposed to exist, have declared, that "no justice of the peace shall take cognizance of any cause where he shall be directly or indirecly interested in the cause or matter to be determined."—Comp. Stat. 131, sec. 23.

No good reason can be assigned for giving a magistrate jurisdiction, where the sum to be recovered goes into the treasury of his town; but the plainest principles of natural justice are opposed to it. It was said in argument, in the county court, that a practice almost or quite cotemporaneous with our government, is opposed to the position now taken, and that the act on which this complaint is found, gives *any* justice of the peace of the county jurisdiction—those residing in the town where the offence is committed, as well as others. Both these positions were taken in the case cited from *Strange,* and they were not only overruled, but most satisfactorily answered by the court. No length of practice can alter a fundamental principle of law; and it is to be presumed that every magistrate, who is interested, was intended to be excepted.—1 Black. Com. 91.—2 Stra. 1174. The reading of the act must be, that every justice of the peace shall have jurisdiction of the offence, who is not disqualified by the general law. If the plaintiff's argument is good for any thing, it proves too much, for it would give jurisdiction to the brother of the respondent. The jurisdiction cannot be sustained on any ground.

2. The court erred in allowing the amendment. The complaint was made by a town informing officer, which answers to an indictment, which can in no case be amended, in matter of substance. After the complaint came into the county court, all power of amendment ceased.

*A. Spalding, State's Attorney.*—It is contended, that the legislature intended that a justice of the peace, resident in the

WASHINGTON,
March,
1834.

State
vs.
Batchelder.

town where the offence was committed, should have jurisdiction to try the offender ; this may fairly be inferred from the wording of the statute.

Let us examine the degree of interest in the magistrate. There can be no interest in the question—no right or custom is settled by it. The only interest which he has is the share of the penalty, that is, of the two dollars fixed by law, divided among all the rateable inhabitants of the town, in proportion to their rate bill. The respondent has a right to a jury to try the facts. The amount of the fine is fixed by law—the magistrate only gives judgment upon the verdict of the jury for the sum fixed by law. Here then he acts merely as a presiding officer, not having it in his power to determine either upon the guilt or innocence of the respondent. Did not the legislature take the same view of this subject when they fixed the fine, and directed the grand juror to prosecute *" before any justice of the peace of the county."*

" The intention of the makers of the statute is to be pursued in the construction of it, and may be collected from the cause or necessity of making it, as well as from other circumstances."—Swift's Dig. 11.—Plowd. 231.—11 Co. 73.

Justices of the peace have always taken jurisdiction in similar cases.

" The contemporaneous exposition of a statute is to be regarded such as the opinion of the sages of the law who lived at the time it was made."—Swift's Dig. 13.—2 Inst. 11.

The penalty's going to the town can be no objection to the magistrate's trying the case. In the case *Civitas London* vs. *Wood,* 12 Mod. 669, which was an action brought in the mayor's court against Wood for £400 as a forfeiture, it was objected among other things, that the mayor had not jurisdiction, because he was interested in a share of the penalty to be recovered. Ward C. Baron says, that " an objection from the point of *interest* would be of no force, for the mayor has no greater share of the penalty to be recovered than even the party defendant has."

And Holt, Justice, says, " it can be no exception that this penalty goes to the use of the body politic ; for it is most reasonable it should be so ; for it is in the nature of damage for an injury done, and that injury is done to the body politic, whose laws are broken and despised, and therefore it is fit they should have the penalty ; and to say that one who is free of the

corporation should not be judge, because he is to have a share of the penalty, is as ridiculous as groundless. And since this objection has had so little regard with us in the King's Bench, I wonder it should be so much insisted on now, especially since it has also been rejected in the Common Pleas."

What is meant by the term " *any justice of the peace?*" In stat. chap. 32, sec. 20, for breaking the peace, if the offence be aggravated by any high-handed violence, it is made the duty of a justice of the peace to bind over the offender. If not attended with high-handed violence, the justice takes jurisdiction and fines, and by law the fine goes into the treasury of the town. It has never been objected that a justice living in the town where the offence was committed, had not the right to enquire into such cases. There the statute says, " *a justice of the peace,*" which means the same as " *any justice of the peace.*"

The 22d section provides that " *any justice of the peace* " within his county shall have final jurisdiction of the offences enumerated in this section, and one half of the fines go to the town treasury. Justices residing in the town have always, it is believed, taken jurisdiction of these cases. Is it not the policy of the law that they should ? If not, the penalties would never be enforced. The statute might as well be repealed.

Again, if the magistrate has not jurisdiction of the case, on the ground of interest, would not the same objection apply to the constable of the town, or the sheriff, if he resided in the town ? They are equally interested with the magistrate, and so is every freeholder in town.

" A sheriff who is party may serve his own writ."—*Bennet* vs. *Fuller*, 4 John. Rep. 485.

" It is no sufficient exception to an indictment for an offence, to which the law annexes a fine for the use of the town where the offence is committed, that the foreman of a grand jury who found the indictment, is a taxable inhabitant of said town."— *Commonwealth* vs. *Thos. Ryan*, 5 Mass. 90.

The interest of magistrates is only theoretic ; and Judge Parsons remarks, that " every fine to the use of the commonwealth may affect the interest of every citizen as it may lessen the public taxes, but if citizens cannot be judges and jurors, no offences can be punished by fine. Where penalties are given to counties, the inhabitants may have an interest somewhat greater, and where penalties accrue to towns, the interest of

WASHINGTON,
March,
1834.

State
vs.
Batchelder.

the inhabitants may be a little more affected. This is all true in theory, but in practice it cannot be believed to have any effect."—Ibid.

From the necessity of the case there must be a distinction between criminal and civil cases. In all criminal cases, the state being a party, the cause must be tried by a court and jury who have a remote interest, and perhaps as great or greater interest than the justice in this case.

By statute, 638, it is made the duty of every town grand juror where the offence shall be committed, to prosecute the same, &c.

"Every justice of the peace is empowered to hear, try and determine all pleas and actions of a criminal nature, if the fines are within the sum of seven dollars."—Stat. 124.

"May bind over all offenders, the enormity of whose offence exceeds his power to try."—Ibid.

In pauper cases the justices are expressly authorized to perform the duties required, "*whether they be inhabitants of such town or not.*"

In this case the interest of the justice may be very strong.

2. Was the complaint amendable? "Criminal informations, which are not founded upon the oath of a jury, may be amended by the court, and even by a single judge at chambers, because no finding of a jury or principle of right is affected by such a change."—1 Chit. C. L. 245–685.—4 Bur. 257.—1 Stran. 185.—4 Mass. 162.

The opinion of the court was pronounced by

MATTOCKS, J.—The main question in this case is, whether the justice, who was a rated inhabitant of the town where the offence was committed, and into the treasury of which town the fine was to be paid, had jurisdiction of the cause. Considerable learning and research have been shown by the respondent's counsel, to shew that by the common law, witnesses, jurors and judges, are incapacitated by being interested. This as to witnesses and jurors, is clearly shown by the authorities cited, and as to judges, that they are not to try causes wherein they are parties; but that an interest in the cause or question, shall exclude a judge from sitting, does not so clearly appear, and what degree of interest or that the smallest fraction of interest, as contended for shall render them incompetent to decide a cause. The cases cited to this point, are first, where

WASHINGTON,
March,
1834.

State
vs.
Batchelder.

the mayor of Hertford unlawfully sat in a cause, "where he himself was lessor of the plaintiff in ejectment." He sat then in his own cause. In *Hesketh* vs. *Braddock*, (3 Bur. 1847,) the objection was, that the sheriff and jurors were interested, being of the corporation, and Mr. Davenport contended the interest was too small and remote to do harm, and urged, to sharpen his argument, that the objection would equally effect the judge, mayor, as he was of the corporation also. But Lord Mansfield, who usually dilated with great fluency and force upon broad general principles, did so in this case as to witnesses and jurors, and as to the sheriff who summoned the jury, of the importance of their being free from every particle of interest; but as to a judge, only says of the case of city of *London* vs. *Wood*, in answer to what Baron Ward had said, to wit: That the objection to a mayor sitting as judge in a cause, was not so much in point of interest as inconsistency, says, "But is not the interest a great ingredient in that inconsistency, and hence comes the rule, that no man shall be judge in his own cause." In 1 Salkeld, 395, where it states that the mayor of Hertford was laid by the heels, for sitting in judgment in a cause where he himself was lessor of the plaintiff in ejectment, though he, by the charter, was sole judge of the court, the marginal note is, "*judge and party*," which goes to confirm the rule named by Lord Mansfield. In 2 Chitty's Blackstone, 237, we find that where a privileged person of the universities is sued in the courts of Westminster Hall, the chancellor or vice-chancellor may put in a claim of cognizance, and among other exceptions to this claim, is where an action is brought against a person himself, who claims the franchise, unless he hath power in such a case to make another judge ; and in a note it appears that the chancellor of Oxford claimed cognizance of an action of trespass brought against himself, which was disallowed, because he should not be a judge in his own case ; but neither here, nor is it believed elsewhere in Blackstone, is it said, that a judge can try no cause wherein he is interested. In 3 Comyn's Dig. 336, under the head of misdemeanor in the judge or officer, it is said : "So for a misdemeanor in the steward or judge of an inferior court, an attachment lies against him, as for a contract, as if he give judgment where he himself is party."—1 Salk. 201–396. In 4 Comyn's Dig. 436, title justices, among other cases it says : "So if any judge has an interest, he or his deputy cannot hear the cause

Washington,
March,
1834.

State
vs.
Batchelder.

or sit in court, and if he does, in Chester, &c. a prohibition goes ;" and R. Hard. 503, is cited. This last quotation is the only direct case or dictum that has been noticed in the books, that says a judge who is merely interested cannot try a cause, for the pauper cases might come within the spirit of the rule against judge and party. It is obvious, however, that the refined learning which relates to objections to witnesses and challenges to jurors does not exist in the case of judges, and what there is but rarely used ; for in cases in the supreme courts, a judge like Lord Raymond in a pauper case from his own parish, whenever delicacy or propriety shall so dictate, will leave the bench, and when a prohibition is sought against the proceedings of an inferior court, which upon the point in modern times, from the dearth of precedents seems to have been very rare, probably some judicial discretion would be exercised as to the degree of interest, if interest alone should be deemed a ground for prohibition. Perhaps after all, this part of the case is scarcely worth the labor that has been bestowed upon it, as the cause must depend mainly on the construction of our own statute and the policy of our own government.

In our revised statute of 1797, justices of the peace "were fully authoized and empowered to hear, try and determine all pleas and actions of a criminal nature, where the fines and forfeitures are within the sum of seven dollars." At that time and even since, there have been penal statutes in which the penalty goes to the towns; and the statute upon which the present prosecution is founded, is of that description ; and during this time, now nearly forty years, the uniform and invariable practice has been, for justices to hear and determine these criminal cases in the same manner as those where the forfeiture or fine goes to the state, and this without dispute or question. It is also observable, that this statute of 1797 is a transcript of 1787. The latter only substitutes $7 for 40s.; so that the practice has the sanction of nearly half a century. But it is now contended, that this has been contrary to the fundamental principles of jurisprudence, and the very nature and structure of justice, and against the evident meaning of the legislature. Nothing is more true in theory, than that every judge or justice who tries a cause, should not have the slightest interest in its determination, and nothing more true in fact and in practice, than that, as it respects state cases in general, there is no such judge or justice in Vermont. Still crimi-

nal justice must be administered.  Every magistrate, like other citizens, is a stockholder as it respects the funds of the state and subject to proportional loss or gain by public prosecutions. Yet this trifling state interest in effect is just nothing.  Apply it to a town, the fine can in no case be over $7.  Ordinarily much less, and the cost, if the respondent is a man of property. If the justice is rich, it is beneath his consideration ; if poor, his proportion of the tax, to be saved or lost, is entirely nominal, and though it be possible, it may sometimes have an influence, that is not the ordinary effect, and in no case are these trials final against the respondent.  If all criminal trials could be purified of the least scintilla of interest that the judge or justice has, it might be well enough for the legislature or court to do it ; but as they cannot, to endeavor to lessen the interest of the justice, when it is so minute already that it will require the philosopher's principle of the divisibility of matter, to do it, yet it cannot be annihilated.  It would be sacrificing convenient practice to useless theory to attempt it, besides the trouble and expense of going abroad for a justice to regulate the police of a town.  These travelling justices which this doctrine would create, would not be so likely to know the character of the party and witnesses, and therefore not so likely to do justice in these petty offences.

Perhaps some light can be thrown upon the views of the legislature in relation to the effect that a corporation interest should have upon the jurisdiction of justices, even in civil cases, by recurring to the poor laws.  The first act of 1797, authorized two justices, not of the same town, to make an order of removal.  Why this exception, unless it was supposed that without it they might ?  These orders are in favor of the town, and unappealed from, are conclusive and often of great value, and what did experience prove ?  Why, that it was a precaution of delicacy and not of use, that it made expense and trouble without benefit.  By a preamble in the middle of the pauper act of 1801, the difficulty is remedied, and by the 5th section it is provided that the justices of the town may act, which provision is again enacted in 1817 ; and now justices try these important though comparatively rare causes in favor of their own towns, and who suffer thereby ?  But it is said that the 23d section of the justice act declares that no justice shall try any cause, where he is directly or indirectly interested in the matter or cause to be determined.  Probably

WASHINGTON,
March,
1834.

State
vs.
Batchelder.

the intention of this clause was to affect civil causes ; because there are few if any state cases in which the trial of a person before a justice will affect the interest of another, so as to prevent his ever being a witness. But if this is not so, yet the clause cannot be construed according to the letter, for that would exclude a justice from trying any state cause, for in all these there is an interest direct or indirect, and whether this town or corporate interest is to be regarded as anything different from the state interest, is still the question. But if it was the intention in this compilation of 1797, to exclude the justice from trying these criminal causes, where these towns were interested, it would have been more natural to have so expressed it like the case of removing paupers, than to have left it to be inferred in the clause under consideration. A case has been cited from 2 Mass. R. 554, in which it was decided, that the judges of the common pleas could try no cause for or against the county where they resided, and in many cases the court think there must be a failure of justice, unless the legislature interfere, but in the 5th vol. 90, *Commonwealth* vs. *Ryan*, the court held that a grand jury living in Boston can find a bill of indictment, although the fine is going to the town of Boston, and of course a judge or justice, and a petit jury can try the offence. The judge thinks this results from necessity, as Bos- is nearly a county itself. He admits that the legislature can disregard these trifling corporate interests, if they like, and that though they appear specious on paper, yet that in practice, they are nothing. Upon the whole we are not disposed to disturb the long practice upon this subject—we think that the interest of the justice was but nominal and may be regarded as such and not to be computed interest, and that the common place maxim of *de minimis leî non curat*, may properly be applied to it.

As to the amendment, the authorities and the practice are both in favor of it, and we see no objection thereto, because the complaint is signed by the town grand juror, that is, because it is a complaint rather than an information or indictment. Either of those can be amended by those who presented them by leave of the court, and so was this.

The judgment of the county court is affirmed.