OPINION OF THE COURT

Per Curiam.

The question presented on this appeal is whether the Chief Administrator of the Courts has authority to assign Judges and Justices of one court to serve temporarily in another court under article VI (§ 26, subd i) of the Constitution of the State of New York when no standards or administrative policies for such transfers have been established in the manner prescribed by section 28 of the same article. We hold that there is no such authority.
On September 21, 1981 the Chief Judge of the State of New York made public announcement of a new, two-step system, to be instituted beginning in January, 1982, for the temporary assignment of Judges of the New York City Civil and Criminal Courts to the Supreme Court of the counties in that city. While the making of such assignments was not new, the procedure announced by the Chief Judge was. Under the process in effect at the time of the announcement, assignments were made by the Chief Ad *28 ministrator of the Courts (respondent Evans) with the assistance of the Deputy Chief Administrative Judge responsible for courts within the City of New York and, although the assignments to the higher court were temporary in designation, several Judges so assigned had served under the assignments for a number of years. Under the new plan announced by the Chief Judge, the details of which were to be promulgated by the Chief Administrator within a month, all New York City Civil and Criminal Court Judges were to be screened by a select committee (the members of which were named in the announcement) to determine their qualification to sit as Acting Supreme Court Justices, following which, assignment to the higher judicial posts would be made on a rotation basis from the lower court Judges recommended by the committee, thus enabling many more to serve in the 97 Supreme Court positions then being filled by temporary assignment.
In conformity with the foregoing announcement, on October 20, 1981 the Chief Administrator made public the details of the rotation plan including a statement of his intentions to begin making assignments under it with the first term of 1982, to give all Civil and Criminal Court Judges recommended by the screening committee who had served in either court for at least one year an opportunity to serve in Supreme Court for substantially equal periods of time, and annually to rotate approximately 50% of the Judges assigned as Acting Supreme Court Justices.[1]
On January 14,1982 petitioner District Attorney of New York County instituted this proceeding under CPLR article 78 to prohibit implementation of the rotation plan, alleging that because subdivision i of section 26 and subdivision c of section 28 of article VI of the State Constitution require that there be standards and administrative policies relative to temporary assignments established by the Chief Judge after consultation with the Administrative Board (consisting of the Chief Judge and the Presiding Justices of the Appellate Divisions) and approval by the Court of *29 Appeals, and because no such standards and policies had been established, the Chief Administrator was without authority to make any temporary assignments under the plan. By so doing he brought into question for the first time the theretofore unchallenged assumption of authority by the Chief Administrator to make temporary assignments of Judges and Justices. On the same day petitioner moved for a preliminary injunction barring the making of assignments under the plan pending adjudication of the proceeding.
After service of an answer by respondents and a hearing before Supreme Court, New York County, the Justice at Special Term by judgment signed January 25, 1982 dismissed the petition and denied the preliminary injunction. He concluded that the District Attorney was not aggrieved by the plan and had no standing to object to it, but that, in any event, the Chief Judge and the Chief Administrator of the Courts had authority to implement the plan. An application for a preliminary injunction during the pendency of an appeal to the Appellate Division was denied on the same day but an expedited briefing schedule for the appeal was fixed.
On March 30, 1982[2] the Appellate Division reversed the judgment dismissing the petition, converted the proceeding to a declaratory judgment action, held that the District Attorney had standing to bring the proceeding, and entered judgment declaring that, by reason of failure of compliance with subdivision i of section 26 and subdivision c of section 28 of article VI of the State Constitution, the plan for temporary assignments was void and without effect. The case is before us on appeal taken as of right by respondents.[3]
*30 We address first the standing of the District Attorney to maintain this proceeding now properly converted to an action for declaratory judgment (CPLR 103, subd [c]). Under the liberalized attitude toward recognition of standing to litigate announced in Boryszewski v Brydges (37 NY2d 361), the District Attorney qualifies under the “zone of interest” test (Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9) as a proper party to initiate this litigation challenging the manner of designation of Judges to the Supreme Court in the City of New York — courts in which he, as the public officer charged with responsibility for prosecution of felony indictments in New York County, must necessarily perform the duties of his office and as to which he has a cognizable interest in assuring that the designation of the judicial officers to preside therein conforms to constitutional mandate.
With respect to the merits of the litigation, the order appealed from should be affirmed with only a procedural modification.
Critical to consideration of the issue and arguments involved is attention to two sections appearing in article VI of our State Constitution — the judiciary article — and to the amendments of those sections accomplished by the vote of the people on November 8, 1977, effective January 1, 1978 to become operative on April 1, 1978. Section 26 of that article speaks to temporary assignments of Judges or Justices to other courts, identifying the courts to which Judges or Justices of other, specified courts may be tempo *31 rarily assigned. Included therein is a provision permitting a Judge of a New York City court to be assigned to Supreme Court in the judicial department of his residence (subd g). Prior to January 1, 1978 subdivision i of the section provided that temporary assignments of the Judges or Justices was to be made by the Appellate Division of the Supreme Court of the department or departments concerned. As of that date the text of subdivision i was amended to read as follows: “Temporary assignments of all the foregoing judges or justices listed in this section shall be made by the chief administrator of the courts in accordance with standards and administrative policies established pursuant to section twenty-eight of this article.”
Section 28 of article VI addresses the much broader subject of administrative supervision of the courts. Prior to 1978 the authority and responsibility for supervision of the unified court system was vested in the Administrative Board of the Judicial Conference, consisting of the Chief Judge of the Court of Appéals and the Presiding Justices of the four Appellate Divisions. The section provided then that the Administrative Board should establish standards and administrative policies for general application throughout the State and that, in accordance with the standards and policies so established, the Appellate Divisions should supervise the administration and operation of the courts in their respective departments. As of January 1,1978 the text of the section was significantly changed; it now provides that the Chief Judge of the Court of Appeals shall be the Chief Judge of the State of New York and the chief judicial officer of the unified court system, that there shall be an Administrative Board (of the same composition as that authorized by the section in its previous form), and that the Chief Judge, with the advice and consent of the Administrative Board, shall appoint a Chief Administrator of the Courts, who, on behalf of the Chief Judge, shall supervise the administration and operation of the unified court system, with such powers and duties as may be delegated to him by the Chief Judge or conferred by law. Subdivision c of the section provides: “The chief judge, *32 after consultation with the administrative board, shall establish standards and administrative policies for general application throughout the state, which shall be submitted by the chief judge to the court of appeals, together with the recommendations, if any, of the administrative board. Such standards and administrative policies shall be promulgated after approval by the court of appeals.”
The changes in subdivision i of section 26 and section 28 described above reflected the radical change in administration of the unified State court system accomplished by the constitutional amendments approved at the general election in November, 1977. Responsibility for. and supervision of the administration and operation of the courts were shifted from the Administrative Board and Appellate Divisions to the Chief Judge of the State and his appointee acting on his behalf, the Chief Administrator of the Courts. In the adoption and promulgation of standards and administrative policies relevant to the newly conferred functions of supervision, a restriction was imposed which assures multistage, multiperson review, comment and approval before promulgation of guiding principles and precepts — i.e., the standards and policies must be considered by the Chief Judge in consultation with the Administrative Board (thereby involving the Presiding Justices of each of the Appellate Divisions), followed by submission to the Court of Appeals. Only after approval by that court may they be promulgated and made effective (see Corkum v Bartlett, 46 NY2d 424, 430).
That this structured system of review and approval is applicable to the making of all temporary assignments of Judges from New York City Civil and Criminal Courts to serve in Supreme Court is apparent from the texts of article VI (§ 26, subd i; § 28, subd c) read together. The first of these sections, providing for the manner of making temporary assignments, explicitly requires that such assignments be made by the Chief Administrator “in accordance with standards and administrative policies established pursuant to section twenty-eight of this article.” Subdivision c of section 28 in turn is explicit that standards and administrative policies are established by the Chief Judge after consultation with the Administrative Board, *33 submission to the Court of Appeals and approval by it, and in no other way.
It is thus evident that, before action may be taken by the Chief Administrator of the Courts under subdivision i of section 26 to make temporary assignments of Judges or Justices of one court to serve in another, standards and administrative policies for general application throughout the State must have been established pursuant to subdivision c of section 28. Without them, such assignments are not constitutionally authorized. The authority vested in the Chief Administrator by the Constitution is not broad and unlimited but is subject to being exercised in conformity with standards which have been established in accordance with constitutional prescription. So here, he had no authority to implement the rotation plan for acting Supreme Court designations.
In reaching this conclusion we reject the argument offered by appellants that subdivision i of section 26 is self-executing and that the reference therein to assignments being made “in accordance with” the described standards requires no more than that they must not conflict with existing standard or administrative policy, if any there be. The interpretation tendered would render meaningless the requirement that there be established pertinent standards and policies following consultation with the Administrative Board and approval of the Court of Appeals. We think the more evident and more appropriate translation is “pursuant to” established standards — which prevents the determination of criteria for making temporary assignments (a subject of sufficient importance to occupy a section of the Constitution) by a single, administrative officeholder and compels participation at a policy-making level by the State’s highest judicial officers. This interpretation implements the constitutional reform of 1977 effecting centralized administration of the courts through the recognition of its system of checks and balances.
The contention that because the rotation plan announced in October, 1981 concerned only temporary assignments within New York City no standards or administrative policies were required to be established in the manner provided by section 28, is without merit. The *34 requirement of standards and policies is not limited to temporary assignments which are State-wide. The phrase “for general application throughout the state” appearing in subdivision c of section 28 describes the standards and policies to be established under that subdivision, not the making of temporary assignments, which is covered in section 26. The impact of the two related sections is that temporary assignments, wherever made and whether local or State-wide, must be made in conformity with defined, general principles having State-wide application.[4]
Any reliance on sections 211 and 212 of the Judiciary Law as authority for the making of temporary assignments between courts without relevant standards and administrative policies is misplaced. Beyond the fact that those statutory sections could not create a less restricted power to make such assignments than that provided by the Constitution, it is to be observed that the reference in section 212 (subd 2, par [c]) to the power of the Chief Administrator of the Courts to make temporary assignments of Judges and Justices of the unified court system expressly provides that the authority to do so is authority “in accordance with the provisions of section twenty-six of article six of the constitution”, and that section 211 (subd 1, par [a]), stating that the Chief Judge shall establish standards and administrative policies, repeats in part the procedure for such establishment set forth in article VI (§ 28, subd c) of the Constitution.
Nor is there merit to the argument that, if standards and administrative policies be necessary, sufficient standards exist by reason of two rules of the Chief Judge promulgated, following their approval by the Court of Appeals, in April, 1978 when the constitutional amendments relating to administration of the unified court system became operative. The first of the two — rule 445.1 (22 NYCRR 445.1 [now rule 1.1]),[5] titled “Chief Judge and Chief Administra *35 tor; exercise of administrative powers and duties”, provided in part: “(a) Establishment of the regular hours, terms and parts of court, and assignments of judges and justices to them, other than temporary assignments, shall be done in consultation and agreement with the presiding justices of the appropriate appellate divisions on behalf of their respective courts”.
The argument advanced is that, because the words “temporary assignments” are used in an exception to the provision that assignment of Judges and Justices shall be done “in consultation and agreement with” Appellate Division Presiding Justices, such temporary assignments lie within the unfettered authority of the Chief Administrator. The argument fails to take into account, however, the fact that the quoted portion of the rule does not address and has no relevance to temporary assignments, in the constitutional sense, of Judges or Justices of one court to serve in another. It is an enabling provision which relates to the establishment of regular hours, terms and parts within a court and the assignment thereto of Judges already serving as members of such court (whether by election, appointment or “temporary assignment” otherwise constitutionally made), after consultation with and agreement of the respective Presiding Justice. Such consultation and agreement originally were dispensed with as to assignments to permit response to needs arising on short notice, as by reason of sudden illness; in its present form the rule similarly permits the Chief Administrator alone to make temporary adjustments in court hours, terms and parts. To construe the exemption of “temporary assignments” as used in this rule to support the creation of a standard or administrative policy with respect to the intercourt, temporary assignments treated in section 26 of article VI of the Constitution to which the rotation plan here under review is addressed would leave the express .constitutional directive that there be standards and policies without meaning.
The second rule of the Chief Judge cited as furnishing the necessary standards is rule 445.3 (22 NYCRR 445.3 [now rule 1.3]), which provides insofar as relevant: “(a) All rules and standards of the Administrative Board of the *36 Judicial Conference, except Part 33 (rules governing judicial conduct), in effect on March 31, 1978, shall be continued in effect as standards and administrative policies established, approved and promulgated pursuant to article VI, section 28(c) of the Constitution, until expressly superseded by new rules or standards and administrative policies”. The argument made is that this rule, continuing prior standards, meets the constitutional requirement with respect to temporary assignments. It fails however because the prior rules and standards of the Administrative Board made no provision for temporary assignments between courts by the Chief Administrator. The reason for this omission is obvious when it is recalled that, prior to the operative date of the amendments to article VI (April 1, 1978) such assignments were made by the various Appellate Divisions without the necessity for any formal, common, guiding standards or principles. Rule 445.3 may not be read as providing the constitutionally required standards and policies for temporary intercourt assignments by the Chief Administrator by a continuation of the absence of standards which served appropriately when, prior to centralization of court administration, the authority to make such assignments was dispersed among four appellate courts, each of which administered the courts within its jurisdiction, in large measure without regard for any necessity for State-wide uniformity.
In sum, the authority granted the Chief Administrator of the Courts in article VI (§ 26, subd i) of the Constitution to make temporary assignment of Judges from one court to another (and subd i is the only source for such authority), may be exercised only pursuant to standards and administrative policies duly established in conformity with the provisions of article VI (§ 28, subd c). No pertinent standards or administrative policies have been established. Accordingly, respondents are entitled to a declaration that the Chief Administrator of the Courts had no authority to implement the rotation plan.[6]
*37 The Judges of the Civil and Criminal Courts of the City of New York who have been acting under temporary assignments made pursuant to the plan have been serving as de facto Supreme Court Justices (People v Czajka, 11 NY2d 253; Sylvia Lake Co. v Northern Ore Co., 242 NY 144; Matter of Trounstine v Britt, 212 NY 421; Curtin v Barton, 139 NY 505). To allow them appropriate opportunity to conclude the matters now pending before them, and to permit the establishment of appropriate standards and administrative policies, the declaration of the Appellate Division will be made effective July 1, 1982.
The order of the Appellate Division should be modified, without costs, to the extent of making the declaration therein effective July 1, 1982, and, as so modified, affirmed.

. Subsequent announcements postponed the time when assignments under the rotation plan would be made to January 25, 1982 and revised the number of Acting Supreme Court Justices to be replaced each year from one half to one third of those serving.

. While the appeal was pending before the Appellate Division that court granted permission to Judge Jack Rosenberg, a Judge of the Criminal Court of the City of New York whose temporary assignment to Supreme Court, Bronx County, had been terminated under the plan, to intervene in the appeal as a party petitioner.

. At the outset we dispose of any speculation that, because one of the constitutional deficiencies urged by petitioners was the failure to obtain approval of any pertinent standard or administrative policy by the Court of Appeals, the members of this court should decline to participate in the appeal. Even if we were to assume that a disqualifying ex officio interest exists which might be a basis for recusal (but see Matter of Ryers, 72 NY 1), we would nevertheless be required to proceed in the matter under the *30 “Rule of Necessity”. As stated by Sir Frederick Pollock, that rule mandates that “although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may but must do so if the case cannot be heard otherwise” (Pollock, A First Book of Jurisprudence [6th ed, 1929], p 270; cf. United States v Will, 449 US 200). With respect to the litigation before us, this court has exclusive jurisdiction under the Constitution of this State to hear the appeal from the order of the Appellate Division (art VI, § 3, subd b, par 1); no other judicial body exists to which this appeal could be referred for disposition. Nor would the situation be different if the members of this court were to recuse themselves and summon other jurists to serve in their place for the purpose of deciding this appeal. Substitute Judges who might be designated to this Bench would themselves, for the period of their service, assume the institutional character of this court and would therefore be subject to the same suggestion of disability that might be thought to exist as to the court as presently composed. Indeed, the present circumstance is not conceptually different from the situation in which the court is called on to determine the scope of its own jurisdiction, a determination which it makes with some frequency. Finally, to the extent that there might be *31 apprehended some personal discomfiture to the members of this court in ruling on an appeal in which the Chief Judge is a litigant, such discomfort provides no justification for our declining to execute the duties of our judicial offices.

. No conclusion should be drawn that provisions for temporary assignments peculiar to the needs of particular localities are foreclosed. What is necessary is only that any such localized provisions shall be in conformity with State-wide standards and policies established as provided in subdivision c of section 28.

. Present rule 1.1 varies from former rule 445.1 in that it also makes exception for “temporary hours, terms and parts” of court.

. We note that the concurring-in-result opinion appears to be predicated on the fundamentally erroneous and troublesome proposition that the mandates of our State Constitution may be fulfilled by implication or de facto acquiescence. This is not the case *37 and such requirements are not to be satisfied in any such casual manner. Nor could this court take the pendency before it of an appeal in a judicial proceeding as an occasion for the exercise of its discrete administrative authority.