# Wilhelmina E. Dingemans v. Board of Bar Examiners

[568 A.2d 354]

No. 88-356

Present: **Allen, C.J., Peck, Gibson and Morse, JJ., and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed September 15, 1989

*Robert D. Rachlin* and *Gregory S. Clayton* of *Downs Rachlin & Martin,* St. Johnsbury, for Plaintiff.

*Jeffrey L. Amestoy,* Attorney General, and *Julie Brill,* Assistant Attorney General, Montpelier, for Defendant.

**Gibson, J.** Pursuant to V.R.A.P. 21 and § 14(b) of the Rules of Admission to the Bar of the Vermont Supreme Court, plaintiff brings this petition for extraordinary relief to contest defendant Board of Bar Examiner's denial of her petition to be admitted to the Vermont bar. Plaintiff is lawfully in this country under the terms of a nonimmigrant H-1 visa that permits her to work for three years as a legal consultant for a law firm in Vermont. Although she has passed the Vermont bar examination, she was denied admission to the bar under § 6(f) of the Rules of Admission, which requires that an applicant be "a citizen of the United States or an alien who has been lawfully admitted to the United States for permanent residence." Plaintiff claims this denial is a violation of the Supremacy and Equal Protection Clauses of the United States Constitution, and the Common Benefit Clause, chapter I, article 7, and Free Denizen Clause, chapter II, § 66, of the

Vermont Constitution, as well as a violation of treaty obligations between the United States and the Netherlands. Because we find the plaintiff's supremacy claim dispositive, we do not reach the other issues.

Plaintiff is a native of the Netherlands, where she received the Dutch equivalent of a J.D. degree in 1985. In June of 1986, she was issued an F-1 (student) visa which enabled her to pursue an LL.M. degree, which she received from the University of Virginia Law School in May of 1987. In July she took the New York bar examination, and was subsequently admitted to practice in that jurisdiction. In August of 1987, plaintiff moved to Vermont and began working as a law clerk for the firm of Downs Rachlin & Martin. She took, and passed, the Vermont bar examination in February of 1988.

With her student visa set to expire on May 16, 1988, plaintiff's employer, Downs Rachlin & Martin, applied for an H-1 visa from the federal authorities on her behalf. H-1 visas are issued to aliens of "distinguished merit and ability ... coming temporarily to the United States to perform services of an exceptional nature requiring such merit and ability"; they are generally issued for three-year periods, and are subject to renewal for up to an additional two years, plus one additional year in "extraordinary circumstances." 8 U.S.C. § 1101(a)(15)(H)(i) (Supp. 1988); 8 C.F.R. § 214.2(h)(11)(ii) (1988). Although admitted to the New York bar, plaintiff had not been admitted in Vermont at the time of her visa application and was thus prevented from applying for permission to work as an attorney in this state.* Thus, her visa application sought permission for her to work as a "legal consultant." In a letter in support of the visa application, Downs Rachlin & Martin described the plaintiff's proposed duties as follows:

> The firm wishes to employ Ms. Wilhelmina Dingemans as a legal consultant in the corporate, commercial and real estate department, doing legal research and writing of

---

* Aliens seeking an H classification in an occupation licensed by state authorities must actually have that license before getting an H classification. *In re St. Joseph's Hospital*, 14 I. & N. Dec. 202, 203 (1972); see also 1 C. Gordon and G. Gordon, Immigration Law and Procedure § 39.02[4][c] (rev. ed. 1989) (if qualified as member of professional group who can and will practice his or her profession immediately upon entry, alien is eligible for H-1 status).

memoranda relating to transactions involving United States and international law issues.

She will provide legal advice to other attorneys within the firm relating to commercial litigation, the purchase and sale of real estate, asset and/or stock purchase of corporations, and other related legal matters.

In addition, she will research and be available as a resource with regard to "EEOC" legal matters, with a particular emphasis on Dutch and German-speaking clients.

As a "legal consultant," she would not have the right to represent a client in her own name, appear in court on behalf of a client, sign documents as an attorney, or engage in the full scope of services normally performed by an attorney. Her earning capacity would be restricted as a result of her limited status. This visa application was approved by the Immigration and Naturalization Service on May 14, 1988.

In June of 1988, plaintiff applied for admission to the Vermont bar. Defendant denied that petition because plaintiff was neither "a citizen of the United States" nor "an alien who has been lawfully admitted to the United States for permanent residence," as required by § 6(f). Plaintiff then brought this action.

Plaintiff's first claim is that her exclusion from admission to the Vermont bar due to her immigration status conflicts with the exclusive authority of the federal government to regulate aliens. She contends that she meets nearly all the necessary requirements for admission enumerated in § 6(f): She has passed the bar examination, expressed willingness to take the necessary oath, and, although a background check has yet to be made, the quality of her moral character is not at issue. The only requirement in which she falls short is that she is not a citizen or permanent resident; thus, it is only Vermont's use of her federal immigration status that prevents her admission to the bar. Defendant, on the other hand, contends that since the terms of plaintiff's visa permit her to work only as a legal consultant and not as an attorney, there is no conflict with the federal immigration program, and she need not be admitted to the bar. We disagree.

The federal government's authority to regulate aliens is derived from its power "[t]o establish [a] uniform Rule of Naturalization." U.S. Const., art. I, § 8, cl. 4. Under the Supremacy Clause, the Constitution and laws of the federal government are "the supreme Law of the Land," *id.* at art. VI, and the United States Supreme Court has long recognized that the federal government has the preeminent role with respect to the regulation of aliens within our borders. *Truax v. Raich*, 239 U.S. 33, 42 (1915).

> The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization. Under the Constitution the states are granted no such powers; they can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states.

*Takahashi v. Fish & Game Commission*, 334 U.S. 410, 419 (1948). This authority is "vitally and intricately interwoven" with the sovereign power of the federal government to control the borders of the United States and conduct the foreign policy of the nation. *Mathews v. Diaz*, 426 U.S. 67, 81 n.17, 85 (1976); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952).

It cannot be disputed, however, that the state has the ultimate interest in assuring the requisite qualifications of persons licensed to practice law within its jurisdiction. *In re Griffiths*, 413 U.S. 717, 722 (1973). In fact, the requirement that applicants for H-1 visas have all necessary licenses prior to the issuance of a visa, see *In re St. Joseph's Hospital*, 14 I. & N. Dec. 202, 203 (1972) ("in an H-1 case where the beneficiary is coming to the United States temporarily, it must be established that the alien will be able to engage in his profession immediately"), is a reflection of the federal government's respect for this state prerogative.

Nevertheless, the federal immigration program contemplates that a nonresident immigrant attorney may engage in the practice of law in this country, see 8 U.S.C. § 1101(a)(32), and plaintiff has already been admitted to the New York bar. It is clear, therefore, that if plaintiff were authorized under

her visa to practice law, and if she met all other state requirements, she would be entitled to be admitted to the Vermont bar, notwithstanding the limitations set forth in § 6(f). Her mere admission to the bar of Vermont would not be a violation of her visa; plaintiff would be in violation only if she exceeded the restriction set forth in her visa, that of being a legal consultant. Upon admission to the bar, the scope of her visa would be a matter to be resolved strictly between herself and the federal government.

Defendant contends that § 6(f) is in conformity with the federal program governing plaintiff, because the rule does not "add to [ ] or take from the conditions lawfully imposed by Congress." *Takahashi*, 334 U.S. at 419. As defendant points out, § 6(f) does not regulate the length of plaintiff's stay in this country or prevent her from working as a legal consultant for Downs Rachlin & Martin. The rule does prohibit her from working as an attorney, but the federal program does the same under the present terms of her visa. Defendant contends that, as applied to her, § 6(f) is thus in conformity with the Supremacy Clause of the United States Constitution, and that, in the absence of the right to practice law, admission to the Vermont bar would be merely a "hollow" right.

Defendant's argument does not withstand analysis, however, because it fails to take into account the entire federal program. Federal regulations provide that "any alien lawfully admitted to the United States as a nonimmigrant ... who is continuing to maintain his nonimmigrant status, may apply to have his nonimmigrant classification changed to any nonimmigrant classification." 8 C.F.R. § 248.1(a) (1988). It is conceivable, therefore, that plaintiff could obtain a change in her visa that would allow her to practice law in Vermont. But plaintiff is barred from seeking any such change in status until she has acquired a license to practice law, see *In re St. Joseph's Hospital*, 14 I. & N. Dec. at 203, a step presently foreclosed to her by § 6(f). The rule thus imposes a burden on the federal immigration program that could not have been intended by the Congress. See *De Canas v. Bica*, 424 U.S. 351, 358 n.6 (1976) (state regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the country is impermissible if it imposes additional burdens not contemplated by Congress); *Teitscheid v. Leopold*, 342 F. Supp. 299,

303 (D. Vt. 1971) (denial of employment because of alienage, pursuant to Vermont statute, created a burden which Congress did not anticipate and which impinged on federal immigration process). Plaintiff's quest, therefore, is not one for a "hollow" right, but, rather, one for a substantial, potential benefit.

We conclude, therefore, and hold that § 6(f), insofar as it denies admission to the Vermont bar strictly on grounds of the alien status of an individual, constitutes a burden on the federal immigration program and thus violates the Supremacy Clause of the United States Constitution.

*Judgment is entered for plaintiff, and defendant is directed to proceed forthwith with the processing of plaintiff's application for admission to the bar of the Supreme Court of Vermont.*