In re Vermont Supreme Court Administrative Directive No. 17 and Harriet and Donald Smith, et al. v. The Vermont Supreme Court, The Honorable Frederic W. Allen, The Honorable Louis P. Peck, The Honorable Ernest W. Gibson III, The Honorable John A. Dooley, The Honorable James L. Morse, in their Individual Administrative Capacities as Justices of the Vermont Supreme Court

[576 A.2d 127]

No. 90-102

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed April 24, 1990

*John F. Evers* of *Langrock Sperry Parker & Wool,* Middlebury, *Jerome F. O'Neill* of *O'Neill and Crawford,* Burlington, and *Deborah T. Bucknam,* St. Johnsbury, for Petitioners.

*Jeffrey L. Amestoy,* Attorney General, and *Marilyn Signe Skoglund,* Assistant Attorney General, Montpelier, for Respondents.

**Per Curiam.** On January 11, 1990, this Court issued Administrative Directive No. 17, which stated as follows:

> The resources available to the Judiciary have been drastically reduced for the remainder of the fiscal year 1990. Accordingly, each superior and district court judge and clerk is hereby ordered to postpone until after July 1, 1990

any civil jury case for which the jury has not yet been drawn.

The administrative judge is hereby authorized to permit the trial of any given case where justice requires, but it is envisioned that nearly all civil jury cases will be delayed.

Plaintiffs are litigants whose cases are pending in the superior and district courts. On March 5, 1990, they brought a petition for extraordinary relief pursuant to V.R.A.P. 21, asserting that Directive No. 17 violates their rights under the Vermont and United States Constitutions and seeking relief "ordering that the Supreme Court Justices, acting in their administrative capacities, and the Supreme Court itself, in its administrative capacity," rescind the order and declare it to be unconstitutional.

On March 12, 1990, we ordered plaintiffs to file a memorandum stating: (1) why this action should not be dismissed as to the justices of this Court in their individual administrative capacities; and (2) whether this question may be decided by a court consisting of members who are named as defendants in this action. Plaintiffs responded by filing a motion to disqualify all current members of the Court because: (a) the Court promulgated Administrative Directive No. 17 which is the subject of this challenge; and (b) the members of the Court are named as defendants in this action. This opinion addresses only the motion to disqualify. Because all members of the Court are challenged, it is being decided by the active members of the Court, without regard to whether such Justices would otherwise be disqualified.* We deny the motion to disqualify.

---

* The rule on motions for disqualification provides that the challenged justices will sit when two or more justices are challenged. See V.R.A.P. 31(e)(2). In any event, the rule was drafted in reference to the grounds for disqualification contained in Canon 3C of the Code of Judicial Conduct. See Reporter's Notes to 1987 Emergency Amendment to V.R.A.P. 31(e). These grounds are aimed at situations where a judge has a bias or interest. This is not a traditional bias or interest case, but instead involves the assertion that the exercise of one of the Court's constitutional responsibilities ethically precludes it from exercising another constitutional responsibility. It is a clear example of the point that: "[t]o decide when a judge may not sit is to define what a judge is." Leubsdorf, *Theories of Judging and Judge Disqualification*, 62

Plaintiffs' first ground for disqualification is that because the Court promulgated Administrative Directive No. 17, our participation in the challenge to its validity would violate Canons 1 and 2 of the Code of Judicial Conduct, A.O. 10. Plaintiffs argue that our sitting on this case would fail to uphold "the integrity and independence of the judiciary" in violation of Canon 1 and would create an appearance of partiality and impropriety in violation of Canon 2. Although this claim has superficial appeal, we do not believe it can withstand analysis.

As this case vividly demonstrates, state supreme courts have a range of powers and responsibilities in governing the judicial branch of government and adjudicating controversies. The directive involved in this case was issued pursuant to our "administrative control of all the courts of the state," as provided in Chapter II, § 30 of the Vermont Constitution. See also Vt. Const. Ch. II, § 37 (rule-making power "governing the administration of all courts"). We are also required to "make and promulgate rules governing practice and procedure in civil and criminal cases in all courts." *Id.* Finally, we must exercise "appellate jurisdiction in all cases, criminal and civil" as well as original jurisdiction where provided by law. Vt. Const. Ch. II, § 30. Plaintiffs' position is that whenever we take an action pursuant to our governance powers, we are ethically barred from adjudicating legal challenges to that action.

■ We find nothing in the Canons that requires recusal in this instance, and other courts that have considered such claims have rejected them. In *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438 (1946), the United States Supreme Court considered whether Rule 4(f) of the Federal Rules of Civil Procedure was valid within the Court's rule-making power. The Court held that the rule was valid. It noted that the fact that it promulgated the rules did not "foreclose consideration of their validity, meaning or consistency." *Id.* at 444. More recently, in

N.Y.U. L. Rev. 237, 237 (1987). When we are defining the essential nature of this Court, it is imperative that the active members of the Court provide that definition.

With respect to the merits and all other aspects of this proceeding, Chief Justice Allen and Justice Peck have recused themselves.

*Mistretta v. United States*, 488 U.S. 361, 109 S. Ct. 647 (1989), the Court considered whether judicial participation on the United States Sentencing Commission violated the constitutional principle of separation of powers. The Court held that it did not offend the separation of powers and, in the process, commented on the ability of judges on the Commission to sit on cases involving sentencing guidelines:

> We see no reason why service on the Commission should result in wide-spread judicial recusals. That federal judges participate in the promulgation of guidelines does not affect their or other judges' ability impartially to adjudicate sentencing issues. Cf. *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, . . . (1946) (that this Court promulgated the Federal Rules of Civil Procedure did not foreclose its consideration of challenges to their validity).

*Id.* at 406–07, 109 S. Ct. at 672.

The analysis of the Supreme Court has been followed in the state courts. In *Berberian v. Kane*, 425 A.2d 527, 528 (R.I. 1981), the Rhode Island Supreme Court held that it could sit on a constitutional challenge to its rule providing for an annual lawyer-licensing fee and that such a challenge could go forward. It concluded that wholesale disqualification of the court would "render the rule-making process self-defeating and nugatory." *Id.* Similarly, in *Board of Overseers of Bar v. Lee*, 422 A.2d 998 (Me. 1980), the Maine Supreme Judicial Court sat on a challenge to its lawyer-licensing fee. It found the procedure unusual but not without precedent. *Id.* at 1001. It likened the process to a litigant's challenge to an advisory opinion issued by the justices pursuant to the specific authority of the Maine Constitution.

A case with some similarities to this case is *Ex parte Farley*, 570 S.W.2d 617 (Ky. 1978), in which the Kentucky Public Advocate (public defender) sued the Justices of the Kentucky Supreme Court "both individually and collectively" to gain access to records of death penalty cases being held by the Administrative Office of the Courts for the Supreme Court. The Supreme Court had already refused to release the records to plaintiff. The Court refused to disqualify itself, likening the proceeding

to a "rehearing of a case in which [the judges] have rendered an opinion." *Id.* at 623.

■ The Maine and Kentucky cases rely on one of two major reasons why there is no ethical objection to our sitting in this case. A court or judicial officer is often called upon to render an opinion of law on a matter on which the court or officer has formally rendered an opinion. Prior knowledge of a legal issue is not grounds to disqualify a judge. See, e.g., *Cipollone v. Liggett Group, Inc.*, 802 F.2d 658, 659 (3d Cir. 1986). The Reporter to the Code of Judicial Conduct wrote about the ability of judges to comment on the law as follows:

> [A] judge may write or lecture on a legal issue, analyzing the present law and its history, its virtues and its shortcomings; he may commend the present law or propose legal reform without compromising his capacity to decide impartially the very issue on which he has spoken or written.

E. Thode, Reporter's Notes to Code of Judicial Conduct 74 (1973). If prior knowledge or commitment on a legal issue would disqualify us, we would be unable to function as the highest court of a state. Many of the matters that come before us involve issues on which one or more of us have rendered relevant opinions.

■ At base, this case involves an issue of law—that is, the constitutionality of a jury moratorium. Plaintiffs have not taken issue with the factual basis behind the moratorium. Instead, they challenge the ability of the Court to impose a moratorium under any circumstances. The fact that we may have taken a position on the issue does not preclude us from deciding it anew.

■ Another reason relates to the way we necessarily perform our administrative and rule-making functions. In response to proposed amendments to federal criminal and civil rules he found unwise, Justice Black emphasized that

> I am reasonably certain, however, that the Court's transmittal [of the rules to Congress] does not carry with it a decision that the amended rules are all constitutional. For such a decision would be the equivalent of an advisory opin-

ion which, I assume the Court would unanimously agree, we are without constitutional power to give.

Statement Accompanying Amendments to the Federal Rules of Civil Procedure, 383 U.S. 1031, 1032 (1966). If this Court were required to determine *in vacuo* by a kind of advisory opinion and without the aid of briefing and argument that every procedural or administrative rule which we adopt is valid from every standpoint, rule-making as provided in the Constitution would effectively cease. See Statement of Judge Albert Maris of the United States Court of Appeals for the Third Circuit, in testimony to Congress on the Federal Rules of Evidence, *quoted in Fisher v. Hatcher*, 44 Mich. App. 541, 551 n.13, 205 N.W.2d 913, 918 n.13 (1973) (Levin, J., concurring). The fact is that our promulgation of the Administrative Directive is not a prior determination that it is valid and constitutional. That determination must await the adjudication in this or a future case.

We have a recent example of the process of challenge to rules of this Court in *Dingemans v. Board of Bar Examiners*, 152 Vt. 494, 568 A.2d 354 (1989). In that case, this Court struck down the citizenship requirement of Rule 6(f) of the Rules of Admission to the Bar of the Vermont Supreme Court, as promulgated by this Court. We found the rule to constitute a burden on the federal immigration program so as to violate the Supremacy Clause of the United States Constitution. *Id.* at 499, 568 A.2d at 357.

Nor do we find plaintiffs' claim valid when it is phrased in terms of "appearance of impropriety" or by stating that our "impartiality might reasonably be questioned." See Canon 3C(1) of the Code of Judicial Conduct. We agree with Professor Leubsdorf's analysis of the use of this kind of standard:

> The reasonable-appearance-of-injustice test, however, distracts judges, legislators, and commentators from clarifying what is and is not unjust. If real objections can be found to a judge's sitting, those objections provide sufficient reason to disqualify. If analysis dispels plausible objections, judges should remove the appearance of injustice by explaining why the objections fail. But an appearance test shifts attention away from what objections are valid to

what objections might appear valid to a reasonable ob-
server who has not wrestled with the problem. The reason-
able person may be a better guide for driving a car than the
thinking judge, but not for deciding whether it is unjust for
a judge to hear a case. The appearance test invites judges
to rest on appearances, instead of looking deeper.

Leubsdorf, *Theories of Judging and Judge Disqualification*, 62
N.Y.U. L. Rev. at 278. Although an appearance standard has a
place in our law, *Richard v. Richard*, 146 Vt. 286, 288, 501 A.2d
1190, 1191 (1985), it is important that it not be overused to the
point where "recusals would only serve to undermine public
confidence in the impartiality of all judges." *State v. Hunt*, 147
Vt. 631, 632, 527 A.2d 223, 224 (1987) (a memorandum decision
by two justices in which they granted defendant's motion for
recusal). Because of the importance of this case to our jurispru-
dence and the nature of this institution, it is critical that we
wrestle with the problem, as Professor Leubsdorf urges, and
look closely at our ethical and constitutional obligations. When
we do so, we believe that disqualification of the Court would be
inappropriate.

Plaintiffs put great weight on the fact that there is no neces-
sity for us to sit on this case because 4 V.S.A. § 22 allows the
appointment of substitute justices for those who are disqual-
ified. We disagree with plaintiffs' assertion that the principle of
necessity does not apply in this case. The principle has been
used in cases in other states to avoid a disqualification of an
entire appellate court. See, e.g., *Commonwealth v. Loretta*, 386
Mass. 794, 797, 438 N.E.2d 56, 58 (1982); *Grinnell v. State*, 121
N.H. 823, 825–26, 435 A.2d 523, 525 (1981). This principle has
likewise been recognized in this state. In *State v. Batchelder*, 6
Vt. 479 (1834), this Court held that a justice of the peace, who
was a taxpayer in the town to which the penalty in a criminal
case was payable, was not disqualified because of interest in the
case. The Court stated:

Nothing is more true in theory, than that every judge or
justice who tries a cause, should not have the slightest in-
terest in its determination, and nothing more true in fact
and in practice, than that, as it respects state cases in gen-

eral, there is no such judge or justice in Vermont. *Still criminal justice must be administered.*

*Id.* at 486–87 (emphasis supplied).

Application of necessity principles where all members of a court are challenged by the same motion is well enunciated in *Ex parte Farley*, where the Kentucky Supreme Court stated its own qualifications to hear the merits:

> The petitioners apparently are of the impression that courts, as such, including of course this court, can be sued and that the judge or judges of the defending court are disqualified by reason of interest. We do not think so, in this jurisdiction at least. The function of a court is to resolve disputes, and it cannot have an interest or be an adversary party in a proceeding carried on within its own system. And if in this case now before it the court could be regarded as an adversary of the petitioners, how would matters be any different if its regular members saw fit to vacate the bench? The special members appointed temporarily to replace them would still constitute that same court and, perforce, they too would be disqualified.

570 S.W.2d at 623. The issue is also explored in *Morgenthau v. Cooke*, 56 N.Y.2d 24, 29–31 n.3, 436 N.E.2d 467, 469 n.3, 451 N.Y.S.2d 17, 19 n.3 (1982), a case involving the failure to obtain approval from the New York Court of Appeals for a judicial assignment policy. The court held that it must sit on such a case despite "some personal discomfiture to members of the court," because using substitutes for all members of the court would turn the substitutes into the Court of Appeals. *Id.* Thus, the court stated that as a matter of necessity the justices were required "to execute the duties of our judicial offices." *Id.*

■ Since the actions challenged in this proceeding were taken in our official capacity as the Vermont Supreme Court, the asserted disqualification to act cannot be eliminated simply by a temporary reconstitution of the Court. We see nothing in the Constitution that allows us to abdicate our fundamental obligations under Chapter II, §§ 29 and 30 in this way. In reaching this conclusion, we are also mindful that under the statute, 4

V.S.A. § 22, the substitute Court is selected by the Chief Justice and is often not accountable through judicial retention because the members of the Court have retired. While substitution may eliminate any question of bias, it leaves the most fundamental questions about the Court and its powers to persons whose selection and retention are not tested by constitutional processes.

The second reason plaintiffs rely upon to disqualify the Court is that each of us is named as a party, and Canon 3C(1)(d)(i) of the Code of Judicial Conduct requires recusal of a judge who is a party to a proceeding. Plaintiffs admit in their filings that we are nominal parties, named only because we promulgated the Administrative Directive which they challenge. Indeed, plaintiffs state that the "naming the five members of the Court has no bearing on the substantive issues in this case nor on whether the five individual justices who signed Administrative Directive No. 17 can decide any of the issues in this case."

A judge cannot be disqualified merely because a *litigant* sues or threatens to sue him or her. We can not encourage such an easy method of disqualification. See *In re Ronwin*, 139 Ariz. 576, 586, 680 P.2d 107, 117 (1983) (en banc). As the Supreme Court of Kansas emphasized, a disqualification in such circumstances would nullify our duty and "permit manipulation of the court." *State v. Rome*, 235 Kan. 642, 650, 685 P.2d 290, 296 (1984). The recusal provision of the Code does not apply to every case where the judge is a party. See, e.g., *Andersen v. Roszkowski*, 681 F. Supp. 1284, 1289 (N.D. Ill. 1988) (decided under analogous provisions of federal law); *In re Martin-Trigona*, 573 F. Supp. 1237, 1243 (D. Conn. 1983), *appeal dismissed*, 770 F.2d 157 (2d Cir. 1985). It does not apply in a case like this where the judges are nominal parties and there is no allegation of personal bias or interest.

*The motion to disqualify is denied.*