OPINION OF THE COURT
Edward M. Horey, J.
On December 23, 1981, Gregory J. Sackinger, while an inmate at Attica prison mailed the following to the clerk of Special Term, Supreme Court, Cattaraugus County, to wit: a petition, sworn to before a notary public, a notice of petition and a proposed order to show cause. All of the documents submitted related generally to the enforcement of rights allegedly violated when the petitioner was a prisoner in the Cattaraugus County Jail. They deal generally with allegations of the prisoner that while so confined he was struck by a correction officer with a ring of keys.
All of the documents submitted were handwritten.
The venue stated on all documents was Supreme Court, Cattaraugus County.
On January 7, 1982, the clerk of the court, Callistra Dykstra, delivered the papers to the Honorable James F. Crowley while that Judge was serving as an acting Justice of Supreme Court assigned to conduct a Special Term of Supreme Court in and for Cattaraugus County at Olean, New York. The Honorable James F. Crowley entertained the petitioner’s application, entered a return date and signed the order to show cause which had been submitted. The signed order to show cause with the other documents was returned by mail to the petitioner. Petitioner states he received the returned documents on January 14, 1982.
*456 The order to show cause by order of the court was made returnable on February 16, 1982. It directed personal service upon respondents, Cattaraugus County Sheriff Charles Hill and on Michael Nevins, former District Attorney, Cattaraugus County, whose term expired December 31, 1981. The order to show cause directed that service be effected on or before February 8, 1982.
An affidavit of petitioner states that copies of the petition were mailed to the respondents by registered mail on or about January 25, 1982.
■ On the return date, the order to show cause was placed on the motion calendar before the Honorable Edward M. Horey, who, by assignment, was conducting a Special and Trial Term of Supreme Court in and for the County of Cattaraugus at Little Valley, New York. On the return date the respondents appeared by attorney David Brautigam, Esq., of the law firm of Shane & Franz. Attorney Brautigam advised the court that respondents, by written motion, had moved to dismiss the petition. Judge Horey, the Justice presiding, advised the attorney for respondents that in view of the nature of the proceedings and the confinement of the petitioner, he elected to exercise his discretion and permit petitioner to proceed as a poor person, pursuant to CPLR 1102 (subd [a]). In that connection, Judge Horey advised that he had contacted an attorney, one Mark Wattenberg, Esq., who had agreed to accept an appointment as attorney for petitioner as a poor person upon the attorney’s release from his employer, Legal Services. The release was to be effective February 28, 1982. The court thereupon appointed Attorney Wattenberg to serve as attorney for petitioner, as a poor person, without compensation. The court directed that a transcript of all papers in the proceedings be prepared at county expense and forwarded to Attorney Wattenberg, pursuant to the provisions of CPLR 1102. All proceedings were then adjourned to March 15, 1982 at which time oral argument on the motion was heard. Decision was reserved. Counsel were directed to submit briefs.
The motion of the respondents to dismiss the petition is made under CPLR 7804 (subd [f]). It raises objections in *457 point of law. Dismissal of the petition is sought on five procedural grounds.
First, respondents contend that the court lacks jurisdiction of the subject matter. Respondents cite as authority for this proposition, CPLR 7801. That section provides in relevant part that: “[e]xcept where otherwise provided by law, a proceeding under this article shall not be used to challenge a determination * * * which was made in a civil action or criminal matter” (CPLR 7801, subd 2; italics added).
It is respondents’ contention that since the factual basis of the petition deals with an allegation that a correction officer struck the petitioner on the leg with a ring of keys while the petitioner was a prisoner in the Cattaraugus County Jail that the transaction involved concerns a purported crime and hence a criminal matter. This court disagrees.
There has been no “determination” made in any civil action or in any criminal matter. Thus, the statutory requirement for restriction of jurisdiction is not present. Further, a reading of the petition discloses that the complaint of the petitioner relates to alleged failures on the part of the District Attorney and the County Sheriff to take what petitioner contends was officially required action in the criminal courts in connection with the incident that the petitioner alleges occurred.
If petitioner be correct in his contention, he is seeking merely to compel the performance of an act and not to review a determination made in a criminal case. CPLR 7801, like its predecessor, section 1285 of the Civil Practice Act, has not deprived the court, in an article 78 proceeding, of the power to compel the performance of an action, which, although it concerns a criminal case, does not constitute a review of a determination therein. (Matter of Koslow v Morrison, 4 Misc 2d 158, 163, citing Matter of Bernoff v Amoroso, 188 Misc 845, 846.)
The court holds that the petition brought under CPLR article 78 is an appropriate procedural vehicle to test the performance or nonperformance of official duties. (Artis v Keegan, 77 Misc 2d 638; Matter of Davis v Shep *458 ard, 92 Misc 2d 181.) The first objection in point of law is disallowed.
The second and third objections of respondents deal respectively with the form of the petition and the service of process. In particular, respondents contend that the petition was not verified and that this is contrary to the requirements of CPLR 7804 (subd [d]). Respondents further contend that the petition was served by mail contrary to the direction in the order to show cause that service of that order be by “personal service”.
The fourth contention of the respondents is that the instant proceeding was not timely brought. Here respondents cite CPLR 217 which provides, in relevant part, that a proceeding against a body or officer must be commenced “within four months * * * after the respondent’s refusal, upon the demand of the petitioner or the person whom he represents, to perform its duty”.
Treating these objections in law in order, it is first noted that while the petition does not contain the formal language of a verification it nonetheless was sworn to by the petitioner before a notary public. It bears the signature and stamp of the notary.
Note is next made that at the time of the alleged assault complained of, the petitioner was a prisoner in the Cattaraugus County Jail at Little Valley, New York. At the time the petition was prepared and forwarded to the Supreme Court, the petitioner was an inmate at the Attica Correctional Facility at Attica, New York, following sentence by the County Court of Cattaraugus County. At the time copies of the signed order to show cause and allied papers were mailed to the respondents by the petitioner, the petitioner was an inmate at the Clinton Correctional Facility at Clinton, New York, having been transferred from Attica prison. The brief submitted by petitioner’s assigned counsel states that at the time of the submission of the brief, the petitioner was then confined in the Erie County Holding Center, Buffalo, New York.
From all that has been presented to this court in this proceeding, it does not appear that the petitioner was ever in a position to comply with the court’s order and effect *459 personal service of the order to show cause. Clearly his confinement in penal institutions made it impossible for him to effect personal service upon the respondents. Further, there is no evidence that the petitioner had the financial wherewithal! to hire process servers to effect personal service of the show cause order on his behalf.
Relative to the timeliness of commencing the instant proceeding, three significant dates appear in the petition and its accompanying exhibit. They are in order:
1. “Sunday, August 23, 1981”. On that date the petitioner alleges he was assaulted by Correction Officer Douglas Rau.
2. “Monday, August 24, 1981”. On that date, petitioner alleges that he approached Charles Hill, Sheriff of Cattaraugus County, and requested that an arrest of Douglas Rau be made on assault charges. An additional sentence contained in this paragraph will be separately treated hereafter.
3. August 26, 1981 (“8-26-81 at 10:35 a.m.”), an investigation was conducted by Deputy Sheriff Ernest R. Travis.
An affidavit of the petitioner, submitted to the court, alleges that the original petition and proposed order to show cause were placed in the United States mail, addressed to the Supreme Court, Special Term, on December 23, 1981.
Given the factual situation which prevailed, viz., that the petitioner was a layman acting without the benefit of counsel, that the petitioner at the time of the preparation and presentation of the petition was confined to the Attica prison, distant approximately 100 miles from the residence of the respondents, and given the fact that the petitioner was subsequently confined to the Clinton Correctional Facility, and still later, to the Erie County Holding Center, in brief, given the fact that .petitioner has at all times been a prisoner in one or more penal institutions, and given the further fact that the petition and the proposed order to show cause were placed in the United States mail one day before the elapse of the statutorily required four-month period, and placing those facts against the importance of the underlying issue presented in the petition, namely, a *460 determination of the rights of a prisoner to access to the criminal courts of this State, this court is of the opinion that the determination of the proceeding should not be made on technical procedural grounds advanced by respondents. It has been repeatedly held by the Supreme Court of the United States that pro se petitions by prisoners must be liberally construed in the petitioner’s favor. (See Boag v MacDougall, 454 US 364; Haines v Kerner, 404 US 519, 520, wherein the court said of pro se complaints by prisoners, “we hold to less stringent standards than formal pleadings drafted by lawyers”.) To same effect is Hayes v Secretary of Dept. of Public Safety (455 F2d 798, 800). See, also, Matter of Hull (312 US 546, 549) wherein a regulation prohibiting prisoners from filing petitions for habeas corpus unless they were found “properly drawn” by the “legal investigator” for the Parole Board was struck down.
The court holds that there was substantial compliance with the procedural requirements dealing with form of petition and manner of service. The court further holds that the proceeding was timely commenced. Respondents’ objections numbered second, third and fourth are disallowed.
The fifth objection and point of law raised by the respondents relates to the relief sought by petitioner.
Respondents are correct in at least two particulars raised in this objection. First, it is true that the petition filed by the petitioner is not an art form of pleading. It is an example of what Mr. Justice Stewart and the Chief Justice opined would be filed if prisoners were granted access to law libraries, viz., “the filing of pleadings heavily larded with irrelevant legalisms-possessing the veneer, but lacking the substance of professional competence”. (Bounds v Smith, 430 US 817, 836 [dissenting opn].) Yet in fairness, the absence of professionalism of the petition is understandable to the court, drafted as it was by a layman without aid of counsel, while the petitioner was confined as a prisoner and constantly being transferred from prison to prison with accompanying changes in prison library facilities and fellow prisoner assistance.
Secondly, and less understandable, is the confusion surrounding the relief which petitioner initially requested *461 and now requests. Again, respondents are correct that such relief is not the same, as petitioner asks for less and different relief now than at the inception of this proceeding.
To explain: the petition submitted initially sought, among other relief, an order of this court to either the Sheriff, or the District Attorney, or both, directing that one or the other, or both of them, file criminal charges against the alleged offending officer. Neither counsel, nor this court, have discovered either statutorily or decisional law that requires a Sheriff or District Attorney to file criminal charges merely upon the request of a prisoner in any instance. Much less would we expect to find such an obligation when neither of such officers have personal knowledge of the crime alleged to have been committed or having some knowledge of the facts, had concluded that no crime was in fact committed.
Clearly a precipitous, unwarranted filing of criminal charges is tortious conduct which can subject the complainant to litigation and can oblige him, upon proof of such conduct, to respond in money damages to the defendant.
In Leeke v Timmerman (454 US 83) the Supreme Court of the United States recently held that a prisoner lacks standing to challenge the failure of a magistrate to issue criminal warrants upon the presentation of charges of alleged criminal conduct by a prisoner to the court. Regrettably, the decision does not state how the prisoner was able to file the charges with the criminal court. This court is of the opinion that the noted decision embraces broadly the issues raised relative to the obligation of the Sheriff and District Attorney to file criminal charges. The decision to file, or not file criminal charges, like the decision to issue warrants, or not issue warrants, is within the discretion of the party involved. (See 454 US, at p 87).
The court finds it to be the general rule that a proceeding under CPLR article 78 does not lie when it seeks to compel the performance of a discretionary act. (23 Carmody-Wait 2d, NY Prac, § 145:117, and cases cited.) Exceptions to the general rule which may be classified broadly under a *462 heading “improper discretionary determinations”, which were not the exercise of honest discretion are not in issue here. Upon submission of his brief, counsel for the petitioner has now withdrawn the request for that part of the relief which sought an order requiring the Sheriff or District Attorney to file criminal charges. For the reasons noted, this court is of the opinion that such withdrawal is well advised.
Petitioner, through his counsel, on oral argument and in his brief also, seeks relief by way of an order of this court that the Sheriff be required to supply petitioner with a written determination of investigation. Petitioner further requests that the court order the respondent, Michael Nevins, to make a reply to petitioner’s letter request that the respondent Nevins file criminal charges against the allegedly offending officer. The court treats this portion of the requested relief in reverse order.
Petitioner’s counsel concedes that he has found no authority requiring that a District Attorney even acknowledge receipt of a letter from a prisoner, much less when such a letter demands that the District Attorney file criminal charges against a third party. Petitioner has abandoned this requested relief. This action also, in the opinion of the court, is well advised, not only because such requested action relates to discretionary action on the part of the District Attorney and thus not subject to mandamus generally as previously noted, but also because in the instant case the respondent Nevins, no longer holds the position of District Attorney of Cattaraugus County. His tenure in office expired December 31, 1981, a date which preceded even service of a copy of the petition and order to show cause on him. To order the respondent Nevins to file criminal charges now would be precisely the same as to order any citizen to take such action as he is no longer a public official. This court is without jurisdiction to make such an order.
The relief of a written report of investigation from the respondent Sheriff is next considered. The facts as pleaded in the petition indicate that the alleged assault occurred on August 23,1981. It was not until the following day, August 24, 1981, that the petitioner approached the respondent *463 Sheriff. The precise time at which the Sheriff ordered an investigation to be made of petitioner’s complaint is not alleged. However, it does appear affirmatively that it was undertaken before August 26, 1981. A typed transcript of part of the investigation that occurred on that date is attached as an exhibit to the petition.
While section 500-c of article 20 of the Correction Law contains general provisions dealing with the custody and control of prisoners in a jail, there does not appear to be contained there, or elsewhere in the Correction Law of this State, any specific requirement dealing even generally with the investigation or processing of complaints of prisoners.
A regulation of the State Commission of Correction found in 9 NYCRR 7006.1 (a) (2) while informative, is not in point. It contains only a requirement that rules for the conduct of prisoners and the administration of such rules be established in writing. “(2) It is the duty of the administrator of a county penitentiary or a county jail to insure that all prisoners are treated humanely, that proper discipline is maintained, and that rules for conduct of prisoners and the administration of such rules are estabished in writing.” (Italics added.)
An investigation by this court discloses that the Commission of Correction is apparently aware of the void of established procedures for the processing of prisoners’ grievances in county jails. That commission, through its local Correctional Facilities Bureau is in the process of establishing such procedures and has initiated guidelines referable to prisoner grievance procedures, and has encouraged local Sheriffs to initiate the procedures suggested in the guidelines on a strictly voluntary basis. The commission employs staff personnel to evaluate the suggested procedures where steps to implement them have been undertaken by voluntary participating Sheriffs.
In summary, it appears that the Commission of Correction is in the process of establishing prisoner grievance procedures through a voluntary and experimental trial and review basis. It does not appear that the prisoner grievance procedures suggested in the commissions’ guidelines have ever been enacted by statute, nor promulgated *464 as binding regulations of the Commission of Correction. They continue today only as experimental procedures.
Despite the absence of any requirement, it is clear that Sheriff Hill did undertake an investigation of the prisoner’s complaint, and he did so with timely dispatch. The court finds his actions commendable.
Petitioner does not complain that he was not advised of the result of the investigation, viz., that, in the opinion of Sheriff Hill, the facts disclosed did not require any affirmative action on his part. Rather, petitioner limits his complaint to the fact that the respondent Sheriff’s conclusions were not presented to him in writing.
In the opinion of the court, the instant proceeding demonstrates the need for the early establishment in this State of procedures for processing prisoners’ grievances. It may well be that when ultimately fixed and determined, such procedures will require a written report to the complainant. It is submitted that such matter and other procedural matters relating to proceedings of prisoners’ grievances are better determined by the Commission of Correction through a comprehensive study program than by the courts generally. However accurate that opinion is, it is certain that the agency is better suited to make such determination than this court is on its knowledge of the single incident in issue.
Let it suffice to note that neither this court, nor counsel have found either statutory or decisional law obligating Sheriff Hill to deliver a written report of investigation. The court finds that at the time in issue, in the instant proceeding, there was no such obligation. The court further finds no basis for concluding that the manner in which Sheriff Hill delivered a report of investigation to the prisoner was arbitrary, capricious, tyrannical, unreasonable, or not in the exercise of honest discretion. The objections of the respondents to the issuance of an order directing the delivery of a written report of investigation is sustained. That portion of the petition seeking such relief is denied.
The final relief requested by petitioner is that by appropriate order this court direct the Sheriff of Cattaraugus *465 County to take such action as may be necessary to afford the petitioner, on his own initiative, an opportunity to institute criminal proceedings against the alleged offender. In the opinion of the court, this request raises a question of fundamental importance and one of constitutional dimension.
In Bounds v Smith (430 US 817, 821, supra) the Supreme Court of the United States, after noting 35 years of decisional development of the principle, posited that “[i]t is now established beyond doubt that prisoners have a constitutional right of access to the courts”. (Italics added.) Note is made that the foregoing enunciation by the Supreme Court was made without reference to specific constitutional clauses, provisions or amendments, an omission noted by dissenting Justices. (See 430 US 817, 834, 839, supra.) The clear implication given in the majority opinion in Bounds v Smith and other decisions of the Supreme Court, however, is that a denial to a prisoner of freedom to communicate to the courts serves no public interest and, therefore, would be an arbitrary exercise of power prohibited by the due process clause of the Fourteenth Amendment. (See Hirschkop & Millemann, Unconstitutionality of Prison Life, 55 Va L Rev, 795, 825.) In the opinion of the court, that is the particular constitutional provision in issue.
Further, decisions by our highest court have held inmate access to the courts must be adequate, effective and meaningful. (Ross v Moffitt, 417 US 600; Johnson v Avery, 393 US 483; Wolff v McDonnell, 418 US 539, 577-580.)
It has also been noted by the Supreme Court of the United States that decisions “have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts”. (Bounds v Smith, supra, p 824; italics added.)
In Lane v Correll (434 F2d 598, 600), the rights of inmates’ access to the courts was described as “the * * * ability to set in motion the governmental machinery”.
The only thing that this court finds missing in judicial precedent is the application of the already determined general constitutional right of prisoners’ access to the courts to the particular purpose of access sought in this proceeding.
*466 The court finds it difficult to believe that the instant problem has not been presented to the courts of this State, or some other State for decision at some time. While the court’s research of the issue has not been exhaustive, it has been as complete to date as the facilities available to this Judge permit. Further, neither counsel for petitioner or respondents have advanced any judicial precedent and this upon the court’s insistence that they research the particular matter in issue. In summary, no precedent has been discovered. Novel as the issue may be, on the strength of the foregoing authorities and the cases cited therein upholding the right of a prisoner’s access to the courts generally, this court has no hesitancy in holding that the petitioner had and now has a constitutional right of access to the courts of this State for the purpose of instituting a criminal charge on his own initiative against a correction officer who is alleged to have committed a criminal act against him.
In the instant case, the holding would seem to be buttressed by the fact that the particular criminal act complained of, viz., being struck'by a ring of keys, could, if proven, violate the provisions of the Eighth Amendment of the Federal Constitution as well as the provisions of section 5 of article I of the New York State Constitution, each of which prohibit cruel and unusual punishment. (See, generally, Wright v McMann, 387 F2d 519; Constitutional Rights of Prisoners: the Developing Law, 110 U of Pa L Rev 985, 1003; Hirschkop & Millemann, Unconstitutionality of Prison Life, 55 Va L Rev 795, 818.)
As noted, the petitioner is no longer a prisoner in Cattaraugus County. He is no longer subject to the jurisdiction of the respondent Sheriff. It is thus obvious that it is impossible to grant the relief requested, viz., that the Sheriff be ordered to provide the prisoner with access to the appropriate court for the purpose of initiating a criminal charge. This does not mean that the prisoner is without redress.
CPLR 3001 provides that the Supreme Court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not other relief is or could be claimed.
*467 This court has chosen to translate its views into a declaratory judgment on what it has determined is a justiciable controversy. On the basis of such a judgment “an armory of individual remedies may be sought (Siegel, New York Practice, ch 16, subd [H], § 441, p 584) to afford appropriate relief in any situation affected by this holding”. (Morgenthau v Cooke, 85 AD2d 463, 472, mod 56 NY2d 24.)
While this court limits its relief to the declaration of the constitutional right previously made, the following observations appear relevant in the light of the arguments advanced orally and suggested in the briefs submitted.
First, it is noted that the requirements for initiating a criminal proceeding of the former Code of Criminal Procedure (§§ 145, 148) which contemplated that “an information” be “made to”, or “laid before” a magistrate initially are no longer applicable. The current requirement is only that such information or other accusatory instrument be “filed” with a magistrate. (CPL 100.05, 100.15; see, also, Artis v Keegan, 77 Misc 2d 638, supra.) Further, it is not presently necessary that the accusatory instrument initiating a criminal charge be sworn to before the court in which the charge is initiated, although that is one of several methods authorized. (See CPL 100.30.)
It was recently observed that “[ojrdinarily anyone who is directly harmed by alleged criminal conduct can file an accusatory information before a Magistrate, unless the statute defining the illegal conduct specifically states otherwise, or the asserted illegal conduct is too remotely connected to the interest to be protected”. (Matter of Maynard v Shanker, 59 Misc 2d 55, 56, cited with approval in Artis v Keegan, 77 Misc 2d 638, 639, supra.). This court sees no reason why “anyone” should not include prisoners. Deprivation of access to the courts is not a necessary or reasonable concomitant of incarceration in the opinion of this court. Any additional burden that flows from providing prisoners access to the criminal courts is not a sufficient basis for shirking what this court regards as a judicial obligation to grant enforcement of constitutional rights whenever required and to whomever they are due.
Note is also made that regulations of the Commission of Correction now in effect require each local correctional *468 facility to provide prisoners access to current legal reference materials which specifically must include not only copies of all typically necessary and applicable laws, but also form books for use therewith. (See 9 NYCRR 7031.4.) In addition, such regulations require the availability of a notary public. (9 NYCRR 7031.5.)
The foregoing observations are set forth for the purpose of indicating that materials and personnel are available to prisoners to provide and assist them with forms and procedures for access to the criminal courts of this State. The only novelty about their availability is that the same books, forms and personnel which were previously available to prisoners to initiate proceedings to get out of jail will henceforward be available to initiate proceedings to get others in jail. One can only speculate whether appellate courts had this result in mind when the noted books and personnel were first ordered to be made available.
The observations are also made for the purpose of indicating to Sheriffs and correction officers that transportation of prisoners to local criminal courts for appearance before magistrates will not generally be necessary in the first instance in which a prisoner seeks to institute a criminal proceeding. The particular local criminal court in which the prisoner’s initial accusatory instrument must be filed is fixed by statute. (CPL 100.55.) Typically it is a magistrate’s court where the alleged crime was committed. It may well be that in some particular instance appearance by a complaining prisoner in a local criminal court and before a magistrate may be necessary in the first instance, or at some later instance. If such a situation develops it may be necessary that application be made to the Supreme Court for an order fixing the manner and means of providing the complaining prisoner with access to the appropriate criminal court, while at the same time making provisions that the prisoner remain safely in custody. Since such practical considerations and problems have been adequately worked out in the instances when prisoners in this State are routinely provided access to the courts for the purpose of arguing pro se petitions seeking habeas corpus or coram nobis, or for other purposes, this court has no doubt that similar problems referable to personal appear *469 anee in criminal courts for the purpose of initiating criminal proceedings will also be solved.
For the foregoing reasons, the petition, considered as a complaint in an action for declaratory judgment, is allowed and judgment should be entered in favor of the petitioner declaring that the petitioner had and still has under both the Constitutions of the United States and the State of New York, a right of access to the criminal courts of the State of New York for the purpose of initiating a criminal proceeding against the correction officer, Douglas Rau, who has allegedly committed a criminal act. In all other respects the relief sought in the petition is disallowed for the reasons stated.
Submit appropriate order on allowance of objection concerning written report of Sheriff, and judgment relative to constititutional rights of the petitioner.