**UNITED STATES**

v.

**MARACHOWSKY et al.**

**No. 10902.**

United States Court of Appeals,
Seventh Circuit.

Feb. 26, 1954.

Rehearing Denied May 26, 1954.

David A. Canel, Martin S. Gerber, Chicago, Ill., Jerome Fox, Chilton, Wis., for appellants, Leonard A. Canel, Chicago, Ill., of counsel.

George E. Rapp, U. S. Atty., Madison, Wis., Frank L. Nikolay, Sp. Asst. to U. S. Atty., Madison, Wis., for appellee.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The defendants, J. H. Marachowsky, sometimes hereinafter referred to as Jake, and his wife, Belle Marachowsky, were indicted in the United States District Court for the Western District of Wisconsin in fourteen counts for making false oaths in a bankruptcy proceeding and in one count for conspiracy, all alleged to have been committed in establishing a false claim in favor of Belle Marachowsky against the Portage Wholesale Company in a bankruptcy proceeding involving that company. In a trial to a jury both defendants were found guilty, fined and given prison sentences. On an appeal to this court the judgment was affirmed on January 7, 1953, as to all counts except the thirteenth, and as to that count the judgment was reversed as not being sustained by the evidence. The petition of the defendants for a rehearing was denied by this court on February 6, 1953. The opinion of this court, fully setting out the facts involved, appears in 201 F.2d 5.

On Friday, June 19, 1953, after their petition for certiorari had been denied, the defendants filed in the office of the Clerk of the District Court for the Western District of Wisconsin, three motions, copies of which had been delivered at Milwaukee on the preceding Monday, June 15th, to the Honorable Robert E. Tehan, Judge of the United States District Court for the Eastern District of Wisconsin, who had presided as judge in the trial of the defendants.

The three motions were: (1) Motion to vacate the order which Judge Tehan had entered on June 12, 1953, denying the defendants' petitions for probation and for an order staying the execution of the sentences. (2) Motion in arrest of judgment and sentences on two grounds, (a) that the indictment was void and the court did not have jurisdiction because each count of the indictment was based on statutes which Congress had repealed June 25, 1948, while the indictment alleged acts of the defendants which had occurred in July and August of 1948; and (b) each count of the indictment was void because it failed to allege that the referee in bankruptcy who administered the oath had the authority to administer the oath. (3) Motion for a new trial based on newly discovered evidence which they alleged would have sustained the contentions of the defendants throughout the trial. Attached to this motion were the affidavits of the three persons who would, if permitted, give the allegedly newly discovered evidence.

On June 19, 1953, the day fixed by the defendants' attorney, a hearing on these motions was held at Madison, Wisconsin, with Judge Tehan presiding. The entry on the hearing recites that court convened at 3:10 P. M. and adjourned at 5:00 P. M., and that, "The Court having heard the arguments of counsel and being advised in the premises," denied the motion for a new trial and the motion in arrest of judgment,

and deferred consideration on the motion to reconsider a former order of the court denying probation to the defendants. The defendants thereupon brought this appeal from the order of the court denying the motion for a new trial and the motion in arrest of judgment.

In Larrison v. United States, 7 Cir., 24 F.2d 82, this court announced a proper guide for courts considering motions for a new trial on the ground of newly discovered evidence where witnesses who had testified against the defendant at the trial had recanted, or where the court was reasonably satisfied that their testimony was false. This court said, 24 F.2d at page 88, that if, in such a case, the defendant "was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial," and that without the false testimony the jury *might* have reached a different verdict, the motion for a new trial should be granted. But, in United States v. Johnson, 7 Cir., 142 F.2d 588, 592, where, as here, there had been no recantation or false swearing shown, this court followed the generally accepted rules for testing the sufficiency of motions for a new trial in criminal cases on the ground of newly discovered evidence as said rules were stated in Berry v. State of Georgia, 10 Ga. 511, namely: " * * * 1st. That the evidence has come to his knowledge since the trial. 2d. That it was not owing to the want of due diligence that it did not come sooner. 3d. That it is so material that it would probably produce a different verdict, if the new trial were granted. 4th. That it is not cumulative only—viz.:—speaking to facts, in relation to which there was evidence on the trial. 5th. That the affidavit of the witness himself should be produced, or its absence accounted for. And 6th, a new trial will not be granted, if the only object of the testimony is to impeach the character or credit of a witness."

Applying these tests to the motion and affidavits here under consideration we cannot say that there was an abuse of discretion by the trial court in denying the motion.

The affidavit made by David W. Allaby states that he was an employee of the Portage Wholesale Company during the summer of 1946; that Jake Marachowsky stated that the company was short of money and was looking for additional operating capital; that he, the affiant, knew that the company was hard pressed for cash; that he was worried about where the money would come from; and that Jake Marachowsky said "he would take care of getting additional moneys for the Wholesale Company, and that these moneys were to be furnished by Belle thru the proceeds of various deals."

The affidavit of Jules Marachowsky stated that John Olson, prior to the trial of these defendants, told the affiant that he, Olson, had received money from Belle Marachowsky by wire and in person; that Olson delivered the attached telegraph receipt to the affiant showing the transmittal to Olson, in Omaha, Nebraska, on June 20, 1946, of $18,000.00; that Olson stated to the affiant that Esther Cohn was the name Belle Marachowsky used in sending the money; that if the records at Western Union were checked, "it would show it to be Belle's handwriting"; and that he, Jules Marachowsky, put the above mentioned receipt away and "never disclosed it." This affidavit also stated that in 1946 Olson told affiant that he, Olson, was going to Omaha to purchase products under Belle's and Jake's directions; that early in 1946 Jake said he had a tentative deal with Belle; that in 1946 the affiant knew of moneys going into the Portage Wholesale Company bank account from Belle; and that Jake told him in 1946 that the company would stand no financial loss as a result of Belle's deal.

The affidavit of John L. Olson stated that the affiant was an employee of the

Portage Wholesale Company in 1946; that he knew from conversations he heard between Jake and Jules Marachowsky that Belle put money into the company; that during 1946 the affiant was paid most of his expenses by Belle; that in 1946 the affiant turned over to Jules a Western Union receipt which Jules kept; that large amounts of money were furnished by Belle in cash or by Western Union, wired from either Shawno or Madison, Wisconsin, Chicago or New York, for purchases and expenses involved; that in 1946 Jake and Belle Marachowsky took up with affiant the subject of his going to Omaha to make purchases; that affiant had heard conversations between Jake and Jules concerning Belle's deals to buy corn and other products; that in these conversations Jake always assured Jules that the company would not lose; and that in 1946 Jules told the affiant that the account with Belle had not been settled.

█ The alleged facts set out in these affidavits, if true, concerned events and matters which were necessarily known to the defendants at the time of their trial because all of the allegations concerned the business in the conduct of which both defendants were actively engaged. The affiant Jules Marachowsky was the brother of the defendant Jake Marachowsky, was part-owner of the business and was actively engaged in its conduct. Jules Marachowsky and Olson both testified at the defendants' trial and could have been questioned about all of these matters at that time if counsel for the defendants had seen fit to do so. David Allaby was also an employee of the company in 1946. There is no showing that he was not available at the time of the trial, and no reason is assigned by the defendants for not having him present and causing him to testify at their trial. His affidavit purported to show that the Portage Wholesale Company was hard pressed for cash in the summer of 1946; but the defendants had both testified and had also produced the bank

records of the company on this question. Allaby's affidavit also stated that Jake had said money for the company was to be furnished by Belle through the proceeds of various deals. All of this proposed testimony by Allaby would be merely cumulative and, therefore, could not be sufficient to justify the granting of the motion for a new trial. The allegedly newly discovered evidence available from Jules Marachowsky and John Olson would also merely tend to prove the same facts for which other evidence had been offered at the trial. It seems highly improbable that if a new trial were granted, and these three witnesses were to testify as indicated by their affidavits, the jury would return a verdict acquitting these defendants.

The defendants also complain that it was the duty of the trial judge to take oral testimony in the hearing on the motion for a new trial; but the transcript reveals that the defendants, the moving parties, offered no testimony.

█ The defendants say, further, that since there was no denial by the Government of the facts on which the defendants' motions were predicated, the allegations of the motions and the statements contained in the affidavits stand admitted. While it is true that the Government filed no written pleading controverting the motions, the attorney for the Government in oral argument pointed out the reasons why the motions should not be granted. We think that all that the Government could possibly be held to have admitted was that the three witnesses, if given an opportunity to testify, would testify in accordance with their affidavits. None of the cases cited by the defendants to support their contention on this question are in point.

The chief complaint of the defendants concerning the action by the trial court on their motion for a new trial seems to be the brevity of the hearing, and that the court did not have before it the transcript of the testimony given in

the trial. The defendants say that the court must weigh such motions and affidavits in the light of all the testimony which is before it and must consider the record made before it; and that the denial of the motion for a new trial without doing this was an abuse of discretion. The defendants point out that the trial judge made his decision on their motion for a new trial immediately after counsel for the defendants and for the Government had completed their arguments on the motion; and they state that at that time the transcript of the testimony given at the trial was not before the court.

On the question of the court considering the motion in the light of the testimony given at the trial, it must be borne in mind that the judge hearing this motion was the same judge who presided at the trial of the defendants which had lasted for approximately five weeks; that one week before the hearing on this motion Judge Tehan had presided at a hearing on a motion by these same defendants for probation; and that a copy of this motion for a new trial, with the affidavits attached, was delivered to him in his chambers in Milwaukee on Monday morning, June 15th, four days prior to the hearing on the motion.

Counsel for the defendants states that during the arguments on this motion the attorney for the Government offered summaries of the testimony given at the trial, cited the court to the numbers of the pages of the trial transcript where such testimony could be found, and that the Government attorney then stated that the three affidavits failed to refute the testimony in the original trial. The accuracy of these summaries of the testimony given at the trial, however, was not challenged by the attorney for the defendants although he is an able attorney and had represented the defendants at the trial and in this court on the appeal, in which a voluminous brief was prepared which quoted and discussed much of the testimony given at the trial.

In ruling on the motion for a new trial Judge Tehan, who is an experienced trial judge, said that the court was familiar with the trial itself, "but its recollection has been refreshed *during this past week* [since he had been furnished with a copy of the motion and attached affidavits], and especially today." (Our emphasis.) In United States v. On Lee, 2 Cir., 201 F.2d 722, 723, the court held that: "A motion for a new trial on the ground of newly discovered evidence is addressed to the discretion of the trial judge. In deciding it he may utilize the knowledge he gained from presiding at the trial as well as the showing made on the motion."

On the record made in this case we cannot say that there was an abuse of discretion by Judge Tehan in denying the defendants' motion for a new trial.

We think the defendants' motion "In Arrest of Judgment and Sentence" is also without merit. In this motion the defendants first contend that the statutes under which the indictment was brought were "not in full force and effect on the date of the alleged offenses or when it [the indictment] was returned." Defendants point out that the 1948 revision and codification of the Federal Criminal Code, 18 U.S.C.A. § 1 et seq., was contained in an Act of Congress which was approved by the President of the United States on June 25, 1948. The offenses alleged by the indictment occurred in July and August of 1948, and the indictment was not filed until June 29, 1951. The defendants contend that the former statute declaring the making of a false oath in a bankruptcy proceeding a crime, 11 U.S.C.A. § 52, was repealed by the 1948 Act, which by its terms became effective September 1, 1948; and that a prosecution under the old act could not be commenced after September 1, 1948, because the savings clause, Section 21 of the new Act, did not save the section of the prior act on making false oaths

in a bankruptcy proceeding or the prior act on conspiracy.

Section 21 of the 1948 Act, see 18 U.S.C.A. following section 5037, provided for the repeal of certain former criminal statutes, including 11 U.S.C. Sec. 52 (1940 Ed.) (false oaths in bankruptcy proceedings), and 18 U.S.C. Sec. 88 (1940 Ed.) (conspiracy), and then provided that, "Any rights or liabilities now existing under such sections or parts thereof shall not be affected by this repeal." While the section formerly defining the making of a false oath in a bankruptcy proceeding, 11 U.S.C.A. § 52, was thus repealed by the 1948 Act, an almost identical definition of this crime is found in the new Act, 18 U.S.C.A. § 152, and the section on conspiracy in the 1948 Act, 18 U.S.C.A. § 371, is in the exact language of the prior Act.

The defendants seem to contend that the statutes repealed by the new criminal code were repealed as of the date the Act was approved by the President, June 25, 1948. This, however, overlooks the express provision of Section 20 of the Act which states that it should "take effect September 1, 1948." The effective date so fixed by Congress applied to all of the provisions of the Act, including the provisions repealing former criminal laws. This necessarily means that the false oaths taken by the defendants in July and August of 1948, in connection with the bankruptcy proceedings, constituted crimes under 11 U.S.C.A. § 52.

To support their contention that since the Act embracing the Criminal Code repealed 11 U.S.C.A. § 52, and that, therefore, they were not liable to prosecution after September 1, 1948, for making false oaths in a bankruptcy proceeding, the defendants cite De La Rama Steamship Co. v. United States, 344 U.S. 386, 73 S.Ct. 381, 97 L.Ed. 422. That was an action against the United States to recover insurance for the loss of a vessel under a war risk policy issued by the War Shipping Administration under the War Risk Insurance Act. The action was filed December 22, 1944. While the action was pending the War Risk Insurance Act was repealed. The Government there contended that the District Court, by the repeal of the War Risk Act, lost its power to deal further with the action. The court held that under the General Savings Statute, 1 U.S.C.A. § 109, the District Court retained jurisdiction of the action, as provided in the repealed Act. The General Savings Statute provides: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. * * *" The Supreme Court held there that rights accrued under the statute prior to its repeal could be enforced after its repeal. We see no reason why the General Savings Statute, on which the court there depended, should not be held equally applicable to the repealed statutes we are here considering. The repealing Act here certainly did not expressly provide that the repeal of the former statutes "should have the effect to release or extinguish any penalty, forfeiture or liability incurred under the statute." On the contrary, it provided just the opposite—that any rights or liabilities existing under the laws repealed should *not* be affected by the repeal, apparently indicating the intention of Congress that the General Savings Statute should be held to apply.

Defendants also rely on United States v. Obermeier, 2 Cir., 186 F.2d 243, in which the court held that a particular period of limitation on the prosecution of an offense did not constitute a substantive right which was saved by Section 21 of the 1948 Criminal Code. In the Obermeier case the court, after pointing out that in the absence of the Section 21 savings provision the repeal of the various criminal laws would have

**242**

amounted to a legislative pardon for all offenses committed prior to September 1, 1948, the effective date of the Act, did say, 186 F.2d at page 251: " * * However, the repeal section, Section 21 of the 1948 Act, * * * contained a saving clause preserving 'any right or liabilities now existing' under the repealed sections. Were we facing here merely a question of the government's 'right' to punish or a defendant's 'liability' to punishment, under a repealed substantive section imposing criminal liability for an offense, the answer obviously would be that this saving clause preserved the 'right' and 'liability' even after September 1, 1948, provided they were not then barred by the statute of limitations. * * * "

In United States v. Kirby, 2 Cir., 176 F.2d 101, 104, the court affirmed a judgment imposing a sentence of five years for an offense which was committed when the criminal statute then in effect authorized such a sentence. However, that law was repealed by the 1948 Criminal Code and 18 U.S.C.A. § 1708, was substituted. This provision in the 1948 law which was in force when the case was tried authorized a penalty of not more than one year. The court in that case relied on the General Savings Statute, 1 U.S.C.A. § 109, and Section 21 of the 1948 Criminal Code, and pointed out that the latter Act expressly provided that: "Any rights or liabilities now existing * * * shall not be affected by this repeal." The court, therefore, held that the defendant could not complain of the larger sentence which was provided by the repealed Act.

The second ground urged by the defendants to support their motion in arrest of judgment is that the indictment failed to allege "that the Referee in Bankruptcy had authority to administer an oath." The indictment here alleged that the defendants testified falsely in the bankruptcy proceeding after taking an oath administered by the Honorable Miles C. Riley, who was a duly appointed Referee in Bankruptcy.

■ To support their contention that the allegation of the authority of the referee was necessary the defendants rely on United States v. Debrow, 5 Cir., 203 F.2d 699, in which the court held that it was necessary in an indictment under the General Perjury Statute to give the name and the authority of the person administering the oath. But that decision was reversed by the Supreme Court of the United States in an opinion announced November 16, 1953, United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 115, 98 L.Ed. ——. In that opinion the Supreme Court pointed out that Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., required that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged," and that it need not contain "any other matter not necessary to such statement." After naming the essential elements of an indictment charging an offense under the General Perjury Statute, 18 U.S.C.A. § 1621, the court noted that the former General Perjury Statute, R.S. § 5396, 18 U.S.C. § 558 (1940 Ed.), which was said to require the name and authority of the persons who had administered the oath, was expressly repealed by the 1948 Act for the reason that its provisions concerning the requirements of an indictment for perjury were covered by Rule 7 of the Federal Rules of Criminal Procedure which became effective March 21, 1946. The court, therefore, held that the indictment in that case was sufficient even though it did not state the name and the authority of the person who administered the oath. There, as in the instant case, the defendants were clearly informed "of that with which they were accused, so as to enable them to prepare their defense and to plead the judgment in bar of any further prosecutions for the same offense." The defendants here could not have been harmed by the fact that the indictment failed to state that the referee in bankruptcy was authorized by 11 U.S.C.A. § 66 to administer oaths in bankruptcy matters.

We think it is clear that neither ground advanced by the defendants in support of their motion in arrest of judgment was sufficient.

The order of the District Court from which this appeal is prosecuted is, therefore,

Affirmed.

### On Petition for Rehearing.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

This criminal proceeding began with the return of an indictment of defendants in fourteen counts on June 29, 1951 in the District Court of the United States for the Western District of Wisconsin. On July 2 following, both defendants filed affidavits averring that Judge Stone of the Western district had a personal bias against them. Thereupon Judge Stone, the only judge in that district, disqualified himself. On July 3, the United States Attorney wrote counsel for defendants that he understood that Judge Tehan would hear the Marachowsky case. On July 5, 1951, Chief Judge Major of this court entered an order assigning Judge Tehan of the District Court of the United States for the Eastern District of Wisconsin, to perform the duties of a district judge and to hold district court in the Western district during the period beginning July 9, 1951 and ending July 16, 1951 and "for such further time as may be required to complete unfinished business."

Pursuant to the designation, Judge Tehan began sitting in the District Court in the Western District on July 9, 1951. Each defendant was then arraigned and entered a plea of not guilty. Thereupon, after conferring with counsel on each side, Judge Tehan, having remarked that he must find a time to try the case which would not interfere with his duties and engagements in the Eastern district (Milwaukee), without objection from any party, set the trial for October 15, 1951 and entered an order summoning a jury.

At the appointed time, a trial began. It persisted for some weeks, resulting in a verdict of guilty as to each defendant. Defendants were sentenced, and an appeal to this court followed, in which, on January 7, 1953, we rendered an opinion, 201 F.2d 5, affirming the judgment as to all counts other than the thirteenth, judgment upon which we reversed.

Defendants' petition for a writ of certiorari having been denied by the Supreme Court, 345 U.S. 965, 73 S.Ct. 949, 97 L.Ed. 1384, defendants filed in the District Court a motion for reconsideration of the order denying them probation, another in arrest of judgment and a third for a new trial. Each was denied. An appeal to this court followed, wherein, on February 26, 1954, we affirmed the orders of the District Court. Defendants' petition for rehearing, as to all the points previously raised and disposed of in our opinion, has been overruled. However, the petition for the first time presented a further argument, not previously urged at any time, namely, that the original trial had been conducted by a judge having no sufficient assignment or designation. Inasmuch as this contention had not been asserted at any prior stage of the proceedings and raised a question as to the jurisdiction of the trial court at the time of trial and sentence we ordered oral argument upon the same.

The specific contention is that the designation by Chief Judge Major of Judge Tehan to sit in the Western district until July 16 and for such further time as might be required to complete unfinished business did not authorize Judge Tehan to preside at the trial of the case at the time set, October 15, 1951. It is urged that the trial of the case, on which arraignment was had on July 9, at a later date was not "unfinished business" but was *coram non judice* and void.

We think this conception arises from an erroneous construction of the order of assignment. This is a criminal proceeding which had its beginning in an indictment and the next step in which was, in the absence of interlocutory mo-

tions, naturally, arraignment of defendants. At that time defendants pleaded not guilty. Obviously these pleas did not terminate the cause. The entire proceeding remained before the court for disposition upon the issue thus framed, that is, determination of the guilt or innocence of defendants. The proceeding remained unfinished, uncompleted until trial had been had and sentence entered.

It was obviously the thought of the United States Attorney, counsel for defendants, Judge Major and Judge Tehan that Judge Stone's disqualification of himself as trial judge in this specific case necessitated assignment of another judge to the Western district for complete disposition of the cause. Had defendants pleaded guilty on July 9 and been sentenced, the proceeding would thereby have been terminated, instead of remaining unfinished or uncompleted. But this event did not occur,—instead, pleas of not guilty were interposed, raising an issue of fact to be tried by a jury or by the court.

Under the Criminal Code and Federal Rules of Criminal Procedure, 18 U.S.C. A., a criminal proceeding begins with the return of an indictment, as provided by Rule 6. When an indictment has been returned defendants have the right to attack its validity or sufficiency and if it is held sufficient they are then arraigned, as provided by Rule 10. Under Rule 11 they may plead not guilty, guilty, or, with the consent of the court, *nolo contendere*. The obvious function of a plea of not guilty is to put the government to its proof and to preserve to defendants the right to defend; the proceeding can not be terminated, completed or finished by any other method. Wood v. U. S., 75 U.S.App.D.C. 274, 128 F.2d 265, 141 A.L.R. 1318. We think it follows conclusively that, after Judge Stone's disqualification, when this proceeding was brought before Judge Tehan upon arraignment and pleas of not guilty were entered, the criminal proceeding remained untried, uncompleted and unfinished, that the proceeding before Judge Tehan, consisting of arraignment, pleas

of not guilty and a jury trial, culminating in a verdict of guilty and sentence, constituted completion of the proceeding and that until these events occurred, it was unfinished business. This is in accord with the rule that a judge who holds court for another district judge has authority to make any order in the case necessary to protect and preserve the rights of the parties thereto. Hall v. McKinnon, 9 Cir., 193 F. 572.

■ We are of the opinion further that the attack upon Judge Tehan's jurisdiction must fail for another reason. Inasmuch as there is no question but that he is a duly authorized district judge and that he purported to be acting upon an assignment which he believed gave him jurisdiction and, in pursuance thereof, performed the duties of a district judge under such color of right, the doctrine announced in many courts concerning officers and judges *de jure* and *de facto* is applicable. In Luhrig Collieries Co. v. Interstate Coal & Dock Co., 2 Cir., 287 F. 711, it appears that some of the orders upon which attack was made were entered by a judge for whom at the time no assignment had been ordered. The Court of Appeals for the Second Circuit had this to say: " * * * in any event the orders were made by a *de facto* judge". 287 F. at page 713. This is in line with the reasoning of the Supreme Court in McDowell v. United States, 159 U.S. 596, 16 S.Ct. 111, 40 L.Ed. 271. There it was contended that the orders of an assigned judge were beyond the jurisdiction vested in him by virtue of his assignment. The Supreme Court said, 159 U.S. at pages 601, 602, 16 S.Ct. at page 112: " * * * whatever doubts may exist whether the order of designation by the circuit judge was within his power, there is another consideration which is decisive of this case. Judge Seymour must be held to have been a judge *de facto*, if not a judge *de jure* * * * (citing cases) * * * where there is an office to be filled, and one, acting under color of authority, fills the office and discharges its duties, his actions are those of an officer *de facto*, and binding

upon the public." The present case is well within the term, *de facto* officer, as defined by the Supreme Court in Norton v. Shelby County, 118 U.S. 425, at page 445, 6 S.Ct. 1121, at page 1127, 30 L.Ed. 178, where it says: "'* * * all that is required when there is an office to make an officer *de facto*, is that the individual claiming the office is in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment, as the case may be. It is not necessary that his election or appointment be valid, for that would make him an officer *de jure*. The official acts of such persons are recognized as valid on grounds of public policy, and for the protection of those having official business to transact.'" See also Ball v. United States, 140 U.S. 118, at pages 128 and 129, 11 S.Ct. 761, 35 L.Ed. 377.

Where a judge had acted without being designated and the parties had consented to his presiding, the Court of Appeals for the Fourth Circuit said, in Rakes v. United States, 163 F.2d 771, at page 773: "The parties having consented to the hearing of the motion by Judge Hutcheson, we treat his finding as though it had been made after a proper statutory designation."

Where the parties stipulated that a case from one district and one from another district might be tried by the judge of one of the districts and he entered decrees in separate districts in each of the respective cases, in The Alaska (Wright v. The Alaska), C.C., 35 F. 555, at page 557, the court approved, saying: "It is contended by the appellants that the judge of the Eastern district had no jurisdiction to try this case, or to sign and make the decree which was made herein; and that the stipulation could not and did not confer such jurisdiction. * * The decree of the district court for the Southern district in the present case appears on its face to have been made at a stated term of that court held within the limits of that district. The case had been heard with the Eastern district case, by the judge of the Eastern district, within the Eastern district, by consent, 'to save two trials,' and it must be inferred, from the terms of the decree, that Judge Benedict was actually holding the district court for the Southern district, within that district, when the decree was entered. The record discloses no application to set aside the decree because such was not the fact, and it must be conclusively presumed that it was the fact, in view of the provisions of sections 591–596, and 600, of the Revised Statutes, under which Judge Benedict could have been designated and empowered to hold the district court for the Southern district."

Here the defendants recognized the authority of Judge Tehan to the extent of going to trial before him without any objection to his right to sit. They followed this action by motions in the District Court, an appeal to this court, application for certiorari to the Supreme Court and, subsequent thereto, by additional motions in the District Court, all without raising any question. Since Judge Tehan was, at the very least, a *de facto* district judge, an attack upon his right to act made for the first time in a petition for rehearing in the Court of Appeals must fail.

For the various reasons stated, the petition for rehearing is denied.