Patrick HAMILTON, Petitioner,

v.

David HOOD, Respondent.

No. 89 Civ. 5308 (JES).

United States District Court, S.D. New York.

Oct. 29, 1992.

---

**2.** 28 U.S.C. § 112(b) provides: "Court for the Southern District shall be held at New York and White Plains."

Patrick Hamilton, pro se.

David Huey, Asst. Dist. Atty., Goshen, N.Y., for respondent.

## ORDER

SPRIZZO, District Judge.

The above-captioned petition for a writ of habeas corpus having come before the Court, and the Court having referred the matter to United States Magistrate Judge Sharon E. Grubin for report and recommendation regarding the petition, and the Magistrate Judge having issued a report recommending that the writ be denied and the petition dismissed, and the Court having considered the report and having reviewed all materials submitted, it is

ORDERED that the report of the Magistrate Judge is adopted in its entirety, and it is further

ORDERED that petition for a writ of habeas corpus shall be and hereby is dismissed, and it is further

ORDERED that the Clerk of the Court be directed to close the above-captioned action.

## REPORT AND RECOMMENDATION

GRUBIN, United States Magistrate Judge:

Petitioner Patrick Hamilton *pro se* seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his judgment of conviction in the County Court of Orange County on April 30, 1984, after a trial by jury, of two counts each of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. *See* N.Y. Penal Law §§ 220.16(1), 220.39(1), 220.03 (McKinney 1989). For the reasons set forth below, I recommend the petition be denied.

## BACKGROUND

The conviction was based in significant part on the testimony of a confidential informant who was wearing a transmittal device when he purchased drugs from Hamilton in Hamilton's home and on tape recordings of the conversations thus made. Hamilton was sentenced to concurrent indeterminate prison terms of 5 to 15 years. On appeal to the New York State Supreme Court, Appellate Division, Second Department, Hamilton claimed that (1) he was denied a fair trial by the denial of his motion to allow the jury to view the premises; (2) he was denied a fair trial by the introduction of "inflammatory evidence" concerning his son; (3) improper evidence was introduced at sentencing; and (4) his sentence was excessive. In a memorandum decision on August 5, 1985, the Appellate Division affirmed the judgment, finding all claims without merit. *People v. Hamilton*, 112 A.D.2d 951, 492 N.Y.S.2d

632, 633 (2d Dep't). On December 15, 1987, the New York Court of Appeals dismissed as untimely Hamilton's motion for an extension of time in which to apply for permission to appeal. *People v. Hamilton,* 70 N.Y.2d 890, 524 N.Y.S.2d 427, 519 N.E.2d 338.[1]

Hamilton has also filed numerous post-conviction petitions and motions in the New York state courts. Those relevant for purposes of the instant petition are the following:

(a) Sometime after November 3, 1986, Hamilton moved pursuant to N.Y.Crim. Proc.Law § 440.10(1) to have his judgment vacated, raising the following claims: (1) the informant's testimony and the tape recordings that were made by means of his transmittal device were the fruits of an illegal search; (2) his indictment was defective; (3) the temporary assignment to the Orange County Court of the Family Court judge who presided at his trial was defective, and the trial court therefore lacked jurisdiction to render its judgment; and (4) both his trial counsel and his appellate counsel rendered him ineffective assistance. *See* Affirmation in Opposition of Barbara J. Strauss, Esq., sworn to Dec. 10, 1987, ¶ 10 (Ex. 5 to Pet.). In a decision and order on May 12, 1987, Judge Thomas J. Byrne of the Orange County Court denied the application:

> The law requires that matters be raised on a post conviction proceeding that either could not have been raised or were unavailable at the time the judgment appeal was considered. The only issue raised by defendant that could not have been raised on appeal is ineffective assistance of his Appellate counsel. In his argument, he fails to submit facts that warrant this Court in granting any relief.
>
> Defendant's application is denied without a hearing.

*People v. Hamilton,* Decision and Order (Ex. 8 to Pet.). On May 2, 1988, Justice Joseph J. Kunzeman denied Hamilton's motion for leave to appeal this order to the Appellate Division, Second Department. *People v. Hamilton,* Decision & Order On Motion (Ex. 16 to Pet.).

(b) In conjunction with his motion for leave to appeal, Hamilton also moved in the Appellate Division, Second Department, for a writ of coram nobis, on the grounds of ineffective assistance of appellate counsel. That motion was denied on October 4, 1988. Justice Charles B. Lawrence explained:

> A review of the record on appeal and the brief submitted on defendant's direct appeal to this court demonstrates that defendant's appellate counsel capably presented numerous nonfrivolous issues for this court's consideration. On this application, defendant has only identified frivolous issues which appellate counsel did not address in the brief submitted on defendant's direct appeal to this court. The defendant's appellate counsel clearly satisfied the constitutional standard of effective assistance of appellate counsel set forth by the United States Supreme Court in *Jones v. Barnes* (463 U.S. 745 [103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ] ). Accordingly, defendant's motion must be denied.

*People v. Hamilton,* Order (copy as printed in *N.Y.L.J.,* Oct. 14, 1988, attached as Ex. 17 to Pet.).

(c) In 1987, Hamilton applied for a writ of habeas corpus to the New York State Supreme Court, St. Lawrence County. On August 26, 1987, Justice Michael W. Duskas denied the application. With respect to the only claim identified in the decision,[2] that it was improper for a Family Court judge to have presided at his trial, Justice Duskas stated:

> Without considering the merits of petitioner's contentions, it has previously

---

**1.** Petitioner filed a petition for a writ of habeas corpus in this court on September 21, 1987 which was dismissed without prejudice by Chief Judge Charles L. Brieant on November 2, 1987 for lack of exhaustion of state remedies insofar as petitioner's motion to the New York Court of Appeals for permission to appeal was still then

pending. *Hamilton v. O'Keefe,* No. 87 Civ. 7813 (CLB), Memorandum and Order at 2 (S.D.N.Y. Nov. 2, 1987) (Exhibit 13 to Petition).

**2.** The petition itself has not been submitted herein.

been established that the official acts of a *de facto* judge are valid and binding on the public and interested third parties, including a petitioner, and the issues of the propriety of that judge's appointment cannot be raised collaterally by means of a *habeas corpus* proceeding.

*Hamilton v. O'Keefe*, Decision & Order (Ex. 12 to Pet.). Hamilton apparently did not seek leave to appeal this decision.

(d) Sometime in late 1988, after the Appellate Division denied his application for a writ of coram nobis, Hamilton filed with that court yet another petition for a writ of habeas corpus. He claimed therein, again, that the Family Court judge had lacked jurisdiction, that the evidence of the informant was improperly admitted, that both his trial counsel and appellate counsel had conflicts of interest, and he raised additional claims that are not relevant herein. The petition was denied on March 20, 1989. After briefly recounting the history of the case on direct appeal and pointing out that, "[b]y the petitioner's admission, four prior applications for a writ of habeas corpus have been dismissed," the Appellate Division held, in relevant part:

A writ of habeas corpus cannot be utilized to review either claimed errors already passed upon in a prior appeal or issues which could have been raised on appeal but were not (*People ex rel. Douglas v. Vincent*, 67 A.D.2d 587 [416 N.Y.S.2d 307], *aff'd* 50 N.Y.2d 901 [431 N.Y.S.2d 518, 409 N.E.2d 990]). Nor may habeas corpus be utilized as a vehicle by which to redress the petitioner's alleged deprivation of effective appellate counsel.

*People of the State of New York ex rel. Hamilton v. Bara*, Motion No. 443, Decision & Order on Motion at 1–2 (2d Dep't).

\* \* \*

In the instant petition, Hamilton challenges his conviction on the following four sets of grounds:

(1) The temporary assignment to the Orange County Court of the Family Court judge who presided at his trial was defective under *Morgenthau v. Cooke*, 56 N.Y.2d 24, 451 N.Y.S.2d 17, 436 N.E.2d 467 (1982), and the trial court therefore lacked jurisdiction to render its judgment, in violation of the New York and United States Constitutions.

(2) His sentencing was improper because (a) the Family Court judge lacked jurisdiction and (b) the sentence was excessive.[3]

(3) He was denied effective assistance of trial counsel because trial counsel did not file an "omnibus motion" or any pretrial motion to suppress the tape recordings of petitioner's conversations with the informant. He proffers as a reason for this failure of representation a conflict of interest, claiming that trial counsel was "working part time with the district attorney's office."

(4) He was denied effective assistance of appellate counsel because appellate counsel did not raise on appeal (a) that the trial court had no jurisdiction, (b) that the informant's evidence was illegal because obtained without a warrant, and (c) that trial counsel had rendered ineffective assistance by failing to move to suppress the informant's evidence. As he claims with respect to trial counsel, he proffers a conflict of interest on the part of his appellate counsel as explanation for why appellate counsel acted in this allegedly deficient manner, alleging that counsel colluded with the chief assistant district attorney because they had been former co-workers and maintained a friendship.

## DISCUSSION

### Grounds (1), (2)(a) and (3)

■ In light of the record in the state courts and the explicit reliance on petitioner's procedural defaults by Judge Byrne in denying his § 440.10 motion and by the Appellate Division in denying his petition for a writ of habeas corpus on March 20, 1989, petitioner's claims that the Family Court judge did not have the authority to

---

**3.** In this connection, petitioner also refers to "inconsistent" sentence and commitment reports, but he does not make clear the inconsistency to which he refers or its alleged bearing on his sentencing.

preside at his trial or to sentence him and that he was denied effective assistance of trial counsel are barred by the procedural forfeiture doctrine of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Under that doctrine,

[i]t is well established that when a state prisoner has failed to raise his federal constitutional claim in the state courts in accordance with state procedural rules, including those requiring that claims of constitutional defects in the trial be raised on direct appeal from a conviction, there has been a procedural default that bars federal habeas review unless the petitioner shows both cause for the non-compliance and prejudice resulting from the alleged constitutional violation. The principle is relaxed when the state courts themselves have disregarded the default and decided the constitutional claim on the merits.

*Roman v. Abrams,* 822 F.2d 214, 222 (2d Cir.1987), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989). *See Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2553–57, 115 L.Ed.2d 640 (1991); *Arce v. Smith,* 889 F.2d 1271, 1273 (2d Cir.1989), *cert. denied sub nom. Arce v. Berbary,* 495 U.S. 937, 110 S.Ct. 2185, 109 L.Ed.2d 513 (1990).

■ Although petitioner does not refer to the cause and prejudice standard, his numerous submissions might be construed to allege that ineffective assistance of trial counsel was the cause for the failure to have raised an objection to the trial judge's jurisdiction. However, petitioner's procedural default in having failed to plead ineffective assistance of trial counsel on direct appeal would bar him from pleading it now as a cause for other procedural defaults. *See Pucci v. Hoke,* No. 87 Civ. 5370 (JES), 1989 U.S.Dist. Lexis 4087 at *2, 1989 WL 46658 at *1 (S.D.N.Y. Apr. 26, 1989) ("While ineffective assistance of counsel may, in some circumstances, constitute cause for failure to object, that claim is also barred because petitioner failed to present that circumstance to the state court as a justification for his procedural default").[4] As an additional matter, it should be noted, in view of petitioner's allegations, that an attorney's conflict of interest may constitute a *per se* violation of the Sixth Amendment right to counsel. *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *Mathis v. Hood,* 937 F.2d 790, 795 (2d Cir.1991). Assuming *arguendo* that it would thus entitle a petitioner to habeas relief notwithstanding his procedural default on that claim, petitioner's claims herein concerning his trial counsel's conflict of interest are nonetheless without merit. Petitioner has wholly failed to substantiate his allegation that trial counsel was "working part time with the district attorney's office." Senior Assistant District Attorney Barbara J. Strauss has represented to this court, and petitioner has not controverted, that "[t]rial counsel was an independently obtained private attorney who, neither at the time of the trial itself, nor at any previous or subsequent time had ever been

---

4. To the extent it can be inferred that petitioner would offer ineffective assistance of *appellate* counsel as cause for failing to raise the issue of ineffective assistance of trial counsel on appeal, we dispose of that claim in our discussion of petitioner's ground (4). In this connection, the Supreme Court has made clear that the consequences of the procedural default doctrine cannot be avoided simply by making each and every procedural default the predicate for a claim of ineffective assistance of counsel:

So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington,* we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

*Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). In short, "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default." *Id.* at 492, 106 S.Ct. at 2647. *See Gonzalez v. Sullivan,* 934 F.2d 419, 422 (2d Cir.1991); *Udzinsky v. Kelly,* 734 F.Supp. 76, 82 (E.D.N.Y.1990); *Arce v. Smith,* 710 F.Supp. 920, 924 (S.D.N.Y.), *aff'd,* 889 F.2d 1271 (2d Cir. 1989), *cert. denied sub nom. Arce v. Berbary,* 495 U.S. 937, 110 S.Ct. 2185, 109 L.Ed.2d 513 (1990).

employed by the Orange County District Attorney's office." Affirmation in Opposition of Barbara J. Strauss, Esq. ("Strauss Aff. II"), sworn to Sept. 19, 1989, ¶ 15.

### Ground (2)(b)

■ Petitioner's claim that his sentence was excessive, which the Appellate Division rejected on the merits on his direct appeal, must be denied because it is well established that no constitutional issue is presented for habeas corpus relief where a sentence imposed falls within the range prescribed by state statutory law. *See, e.g., Chisolm v. Henderson*, 736 F.Supp. 444, 449 (E.D.N.Y.1990), *aff'd*, 953 F.2d 635 (2d Cir.1991); *Canargo v. Bara*, No. 89 Civ. 3250 (RPP) (SEG), Report and Recommendation, 1990 U.S.Dist. Lexis 2757 at *11–12, 1990 WL 26921 at *4 (Feb. 16, 1990) (Order accepting Report and Recommendation reported at 1990 U.S.Dist. Lexis 2731, 1990 WL 26291 (S.D.N.Y. Mar. 5, 1990)); *Underwood v. Kelly*, 692 F.Supp. 146, 152 (E.D.N.Y.1988), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *Diaz v. LeFevre*, 688 F.Supp. 945, 949 (S.D.N.Y. 1988); *Castro v. Sullivan*, 662 F.Supp. 745, 753 (S.D.N.Y.1987). As petitioner's sentence fell well within that prescribed by the New York legislature for class B felonies (*see* N.Y.Penal Law §§ 70.00, 220.16, 220.39 (McKinney 1975 and 1989)), there is no basis for federal habeas relief.

### Ground (4)

Insofar as petitioner's claim of ineffective assistance of appellate counsel was rejected on the merits by the last two state courts to have directly considered it,[5] it is properly before us on this petition.

Under *Strickland v. Washington*, a petitioner claiming ineffective assistance of counsel has the burden of demonstrating two elements. First, he must show not simply that his counsel erred, but that the errors made were not within the realm of reasonableness under the professional norms prevailing at that time. 466 U.S. at 687–88, 104 S.Ct. at 2064. In this context, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel has "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. Second, the petitioner must show that his attorney's performance prejudiced his defense, *i.e.*, that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. "Although the *Strickland v. Washington* test was enunciated in the context of a claim of inadequate representation arising from an attorney's performance at trial, it is also applicable to claims directed to appellate representation." *Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir.1990). *See United States ex rel. Roche v. Scully*, 739 F.2d 739, 742 (2d Cir.1984); *Gulliver v. Dalsheim*, 739 F.2d 104, 107 (2d Cir.1984); *DeVine v. Sullivan*, 775 F.Supp. 129, 131 n. 2 (S.D.N.Y.1991); *Curzi v. United States*, 773 F.Supp. 535, 542 (E.D.N.Y.1991).[6]

In these terms, in order for petitioner to prevail on this claim of ineffective assistance, there must have been a "reasonable probability" that the outcome of his appeal would have been different had appellate counsel claimed lack of jurisdiction of the trial court, attacked the admissibility of the informant's testimony and the recordings of his conversations with petitioner, or

---

5. See above discussion of Judge Byrne's May 12, 1987 decision and order denying Hamilton's motion to vacate and Justice Lawrence's October 4, 1988 order denying Hamilton's application for a writ of coram nobis.

6. As noted in our discussion of petitioner's conflict-of-interest allegations against trial counsel, an attorney's conflict of interest may constitute a *per se* violation of the Sixth Amendment right

to counsel. *See* p. 433, *supra*. However, petitioner's allegations against appellate counsel, that he "admittedly stated that the then chief assistant district attorney was his friend and former co-worker" and that he made "an *ex parte* visit to the district attorney's office" to arrange a stay of petitioner's sentence pending the appeal, Petitioner's Brief and Memorandum at 6, do not remotely support a claim of conflict of interest.

claimed that trial counsel was ineffective in failing to raise such claims. Insofar as these claims would have been without merit, however, it is clear that appellate counsel did not err in failing to argue them nor is there any "reasonable probability" that a different outcome would have resulted.

■ With respect to his jurisdictional claim, petitioner contends that the temporary assignment to the Orange County Court of the Family Court Judge who presided at his trial was improper under Article 6 § 26(i) of the New York State Constitution, as construed by the New York Court of Appeals in *Morgenthau v. Cooke*, 56 N.Y.2d 24, 451 N.Y.S.2d 17, 436 N.E.2d 467 (1982). *Morgenthau v. Cooke* involved a plan instituted by then-Chief Judge Cooke of the New York Court of Appeals in 1981–82 for the temporary assignment of judges of the Civil and Criminal Courts of the City of New York to the New York Supreme Court. The New York Court of Appeals declared the plan void because it had not been adopted pursuant to the procedure set forth in the New York Constitution, Article 6 §§ 26, 28 (McKinney 1987).[7] Under Art. 6 § 26(i), the Chief Administrator of the courts did not have authority to make such temporary assignments "when no standards or administrative policies for such transfers have been established in the manner prescribed in [Art. 6 § 28]." *Morgenthau v. Cooke*, 451 N.Y.S.2d at 18, 436 N.E.2d at 468. Petitioner contends that, similarly, no such "standards or administrative policies" governing the temporary assignment of Family Court judges to County Courts had been adopted by the time of his trial, and that the judge who presided therefore had no authority to do so.

We have *no* reason to believe that no such "standards or administrative policies" were in effect at the time of the appointment nor that it was not made in accordance with all prescribed procedures,[8] but assuming *arguendo* petitioner is correct, his argument is still without merit. In the wake of *Morgenthau v. Cooke*, numerous petitioners for writs of habeas corpus and civil rights litigants brought cases arguing that their convictions by improperly appointed judges violated their constitutional rights. In *Barry v. Cooke*, No. 82 Civ. 5146 (TPG), slip op. (S.D.N.Y. June 29, 1983), and in 26 opinions over the next two weeks, Judge Griesa of this court rejected such arguments, making clear that neither the federal Constitution nor New York state law was violated by a trial before such a *de facto* judge "whose assignment in a particular court may have some procedural defect":

---

7. Article 6 § 26 of the New York State Constitution, which deals with "temporary assignments of justices or judges to other courts," provides in pertinent part:

f. A judge of the family court may perform the duties of his office or hold court in any county and may be temporarily assigned to the supreme court in the judicial department of his residence or to the county court or the family court in any county. . . .

g. A judge of a court for the city of New York . . . may perform the duties of his office or hold court in any county and may be temporarily assigned to the supreme court in the judicial department of his residence. . . .

\* \* \* \* \* \*

i. Temporary assignments of all the foregoing judges or justices listed in this section shall be made by the chief administrator of the courts in accordance with standards and administrative policies established pursuant to section twenty-eight of this article.

N.Y. Const. Art. 6 § 26 (McKinney 1987). Article 6 § 28(c) provides:

c. The chief judge, after consultation with the administrative board, shall establish standards and administrative policies for general application throughout the state, which shall be submitted by the chief judge to the court of appeals, together with the recommendations, if any, of the administrative board. Such standards and administrative policies shall be promulgated after approval by the court of appeals.

*Id.* Art. 6 § 28(c).

8. Respondent merely asserts that the Family Court judge who tried petitioner "was properly assigned by the Hon. Joseph F. Gagliardi, Administrative Judge for the Ninth Judicial District, to sit in the Orange County Court in March, 1984." *See* Strauss Aff. II, ¶ 13. Petitioner also sent to chambers a copy of a letter dated August 26, 1987 that he received from Robert J. Sise, Deputy Chief Administrative Judge for Courts Outside of New York City, stating without further explanation that as administrative judge, Judge Gagliardi had the authority to make intra-county assignments of judges.

The argument [that due process rights are violated by being tried before a judge lacking proper authority] has no merit whatever. The New York Court of Appeals, in its decision invalidating the first temporary assignment plan, anticipated the question of the authority of judges acting under that plan. The Court specifically declared that these judges had been "serving as *de facto* Supreme Court justices." 451 N.Y.S.2d at 33 [436 N.E.2d at 483]. Clearly there was no violation of the Federal Constitution in having criminal proceedings held before these judges. They were not interlopers.... The problems later found with regard to the particular selection process were not of such a nature as to indicate any problems about the competence of the individuals or their ability to function in a judicial capacity in the criminal cases assigned to them. It has been held in several factual contexts that a duly commissioned judge, whose assignment in a particular court may have some procedural defect, may be considered a *de facto* judge capable of conducting valid proceedings as such. *McDowell v. United States,* 159 U.S. 596, 602 [16 S.Ct. 111, 113, 40 L.Ed. 271] (1895); *Leary v. United States,* 268 F.2d 623 (9th Cir.1959); *United States v. Marachowsky,* 213 F.2d 235 (7th Cir.1954).

*Barry v. Cooke, supra. See also People v. Butler,* 92 A.D.2d 1071, 461 N.Y.S.2d 913, 914 (3d Dep't 1983) ("even if it is assumed that the Chief Judge lacked authority to transfer [the judge from one county to another, he] nevertheless had jurisdiction to sentence defendant"). Petitioner has given us no reason to question the qualifications, rulings or temperament of the judge who presided at his trial or to doubt that he in fact received a fair trial. As there would have been no merit to petitioner's claim under either state or federal law, his appellate counsel's failure to argue it hardly constituted ineffective assistance.

■ Petitioner's claims that appellate counsel should have argued that the informant's evidence was illegal because obtained without a warrant and that trial counsel was deficient in failing to move to suppress it must also be denied. Neither the informant's entry into petitioner's home nor the admission of tape recordings of conversations that were transmitted to agents outside violated the Fourth Amendment. The Supreme Court dealt with essentially the same situation in *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1969), ruling that the Fourth Amendment did not bar admission at trial of a defendant's incriminating statements that were overheard by warrantless electronic eavesdropping and recorded by government agents by means of a transmitter worn by an informer during his meetings with the defendant at the defendant's home and elsewhere. The Court reaffirmed that the Fourth Amendment

> affords no protection to "a wrong-doer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States,* [385 U.S. 293,] 302 [87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966)]. No warrant to "search and seize" is required in such circumstances, nor is it when the Government sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, *Lewis v. United States,* 385 U.S. 206 [87 S.Ct. 424, 17 L.Ed.2d 312] (1966), or when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence. *Lopez v. United States,* 373 U.S. 427 [83 S.Ct. 1381, 10 L.Ed.2d 462] (1963)....

*United States v. White,* 401 U.S. at 749, 91 S.Ct. at 1125. Because it is clear that petitioner "invited the [informant] to his home," *Lewis v. United States,* 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966), neither the informant's entry into petitioner's home nor the consequent transmission and recording of their conversations violated petitioner's rights. *See also United States v. Myers,* 692 F.2d 823, 859 (2d Cir.1982), *cert. denied sub nom. Lederer v. United States,* 461 U.S. 961, 103 S.Ct. 2437, 77 L.Ed.2d 1322 (1983) (citing *United States v. White* and *Lopez v. United*

*States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), that Abscam Congressman's "conversations with undercover agents in whom he chose to confide were not privileged, and mechanical recordings of the sights and sounds to which the agents could have testified were proper evidence"); *United States v. Gambino,* 734 F.Supp. 1084, 1092 (S.D.N.Y.1990) (citing *White* and *Lopez* to effect that "[c]ourts are in agreement that confidential informants and undercover agents, whose identity is unknown by person exercising authority, may be granted consent to enter a premises"); *United States v. Wilson,* 565 F.Supp. 1416, 1437 (S.D.N.Y.1983) (citing *White* and *Lopez* to effect that where evidence "obtained through electronic surveillance" is "obtained with the consent of one of the participants to the conversation ... there is no basis for its suppression"); *United States v. Williams,* 529 F.Supp. 1085, 1094 (E.D.N.Y.1981), *aff'd,* 705 F.2d 603 (2d Cir.1983) (citing *White* to effect that "consensual recordings have, as a matter of precedent, escaped the exclusionary rule"). Therefore, the admission at petitioner's trial of the tape recordings of his conversations with the informant and the informant's testimony concerning petitioner's drug sales was proper. Hence, neither trial nor appellate · counsel violated the Sixth Amendment in failing to attack it. Ground (4) of the petition must, therefore, be rejected in its entirety.

## CONCLUSION

For the above reasons, I respectfully recommend that your Honor dismiss this petition.[9]

---

**9.** Although petitioner has fully presented his claims herein *pro se,* he does have outstanding an application for appointment of counsel. I did not rule on that application, pending my study of the claims presented. Finding, upon thorough examination of the petition, that it did not involve complex legal or factual issues, I determined appointment of counsel would not be likely to lead to a more just determination in

this case and proceeded accordingly to render this report and recommendation. *See Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170 (2d Cir.1989); *Hodge v. Police Officers,* 802 F.2d 58, 61–62 (2d Cir.1986). *See also Frazier v. Wilkinson,* 842 F.2d 42, 46–47 (2d Cir.), *cert. denied,* 488 U.S. 842, 109 S.Ct. 114, 102 L.Ed.2d 88 (1988); *Buitrago v. Scully,* 705 F.Supp. 952, 957–58 (S.D.N.Y.1989).